THADDEUS KSZEPKA'S CASE.

Suffolk. November 7, 1990. - December 17, 1990.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, & GREANEY, JJ.

*Workers' Compensation Act*, Lump-sum settlement, Subsequent injury.

The reviewing board in the Department of Industrial Accidents incorrectly
interpreted G. L. c. 152, § 48, in contravention of public policy, by
allowing an offset of lump sum settlement benefits paid to an injured
employee against a subsequent compensation award to the same em-
ployee for a "separate and distinct" injury on the grounds that the
same insurer was involved in both claims and that the awards were
allegedly duplicative. [845-849]

APPEAL from a decision of the Industrial Accident Re-
viewing Board.

The Supreme Judicial Court on its own initiative trans-
ferred the case from the Appeals Court.

*Earlon L. Seeley, Jr.*, for the employee.

*Donald E. Phillips* for the insurer.

*Wendy M. Bittner*, for Massachusetts AFL-CIO, amicus
curiae, submitted a brief.

*Charles W. Barrett, Jr., Thomas E. Connolly & John B.
Rest*, for Massachusetts Academy of Trial Lawyers, amicus
curiae, submitted a brief.

*Bernard L. Mulholland*, for Workers' Compensation Sub-
committee of the Massachusetts Bar Association, amicus cu-
riae, submitted a brief.

GREANEY, J. This is an appeal by Thaddeus Kszepka (em-
ployee) from a decision of the reviewing board of the Depart-
ment of Industrial Accidents (board) which held that the
employee's award of weekly workers' compensation benefits
should be offset by a lump-sum settlement, entered into with
the same insurer, of another claim arising out of a separate

and distinct injury. We transferred the case from the Appeals Court to this court on our own motion. We agree with the employee that the board's decision is contrary to the meaning of G. L. c. 152, § 48, as amended through St. 1977, c. 776. Consequently, we reverse the board's decision.[1]

The pertinent facts are as follows. The employee was actively employed by Pierson Industries, Inc. (Pierson), as a maintenance mechanic from 1960 to 1980. Pierson had workers' compensation insurance with Aetna Casualty and Surety Company (Aetna). On July 19, 1972, the employee injured his right shoulder at work when a socket wrench that he had been using to remove a valve slipped from a nut. He felt excruciating pain in his right shoulder and promptly reported the incident to his supervisor. The employee received ongoing medical and chiropractic treatment in connection with the injury, but missed no time from work, despite the pain.

On May 2, 1980, the employee sustained an industrial injury to his back while at work for Pierson. Aetna accepted liability and commenced paying weekly benefits. The employee's persistent shoulder symptoms were overshadowed by the back pain and related symptoms at this time. In October, 1981, the employee entered a hospital for treatment of his lower back pain. As part of his physical therapy, he was required to do push-ups. During therapy, the employee's shoulder pain reemerged, and he was only able to complete two push-ups. Soon thereafter the employee recommenced medical treatment for his right shoulder.

On June 29, 1982, the board approved a structured lump-sum settlement of the back claim. The employee, proceeding pro se, had negotiated the settlement with Aetna, and the papers reflect that it was the parties' understanding that the only claim being extinguished was the back claim. Neither the negotiations nor the agreement made any reference to

---

[1]We acknowledge amicus briefs filed on behalf of the employee by Workers' Compensation Subcommittee of the Massachusetts Bar Association, Massachusetts Academy of Trial Attorneys, and Massachusetts AFL-CIO.

claims for benefits resulting from the shoulder injury. Aetna's attorney testified that he never intended to close out any claims related to the employee's shoulder injury, and, indeed, prior to the settlement conference, he expressly assured the employee that the shoulder claim would remain open.

The employee's shoulder condition worsened during the summer of 1982, and in July an arthrogram revealed a massive tear of the rotator cuff in the shoulder. The employee underwent shoulder surgery on September 16, 1982, and this was followed by a period of total disability, during which he underwent physical therapy. The employee filed a claim against Aetna for further compensation for the shoulder condition. A single member found that the employee had sustained a compensable shoulder injury in 1972 and that, as a result, he had been temporarily totally disabled from September 16, 1982, until March 16, 1984, the date on which he terminated physical therapy. The single member ordered Aetna to pay compensation, based on an assigned earning capacity, for the period of total disability and also for the period subsequent to that. Medical expenses, costs, and interest were included in the decision.

Both parties appealed to the board. The employee disputed the assigned earning capacity and argued also that enhanced benefits should have been awarded. Aetna argued that the lump-sum settlement of May 19, 1982, also concluded liability for the 1972 shoulder injury because the back therapy aggravated the shoulder condition, and both conditions thus formed a single incapacity.

The board's decision, filed on June 9, 1989, affirmed the single member's decision that the shoulder injury was separate and distinct from the 1980 back injury. The board further found that the employee was entitled to the ongoing compensation awarded by the single member as a result of the shoulder injury. It held, however, that Aetna was entitled to credit the lump sum settlement of the back injury claim, dollar for dollar, against the weekly incapacity benefits to which the employee was entitled as a result of the shoulder injury. While Aetna had not argued for such an arrange-

ment, the board concluded on its own that it was necessary in order to avoid a perceived double recovery by the employee. The board construed G. L. c. 152, § 48, as amended through St. 1977, c. 776, as providing that a lump-sum settlement may affect another compensation award for a different injury if the insurer and employee in both awards are identical, in which case the settlement may offset the other award. We agree with the employee that this construction by the board contravenes the plain meaning of the statute.

General Laws c. 152, § 48, was amended in 1977 by the addition of the following paragraph:

> "Whenever a lump sum settlement agreement or pay-ment has been approved by the reviewing board in ac-cordance with the terms of this section, such agreement shall affect only the insurer and employee who are par-ties to such lump sum agreement and shall not affect any other action or proceeding arising out of a separate and distinct injury resulting in an incapacity whether the injury precedes or arises subsequent to the date of settlement."

The language of this amendment is unambiguous, and we must therefore follow the ordinary meaning of the words. See *Bronstein* v. *Prudential Ins. Co.*, 390 Mass. 701, 704 (1984); *Jinwala* v. *Bizzaro*, 24 Mass. App. Ct. 1, 4 (1987). The stat-ute clearly provides that a settlement *shall not* affect any other action or proceeding arising out of a separate and dis-tinct injury. This provision is not modified by any other por-tion of the statute.[2] In arguing for an exception when the same insurer is involved, the board failed to acknowledge this

---

[2]The board apparently read the preceding phrase — "such agreement shall affect only the insurer and employee who are parties to such lump sum agreement" — as meaning that a settlement *will* affect the parties, if they are the same, in subsequent proceedings. This reading is implausible, as the phrase is placed in conjunction with the phrase providing that the settlement shall not affect other actions arising out of separate and distinct injuries. The correct reading of the phrase is that a settlement will affect the parties in the context of the agreement, but not beyond.

provision, and attempted to reject it as "surplusage." See *Meunier's Case*, 319 Mass. 421, 423 (1946). See also *Gallagher* v. *Goldstein*, 402 Mass. 457, 460-461 (1988). An incorrect interpretation of a statute by an administrative agency is not entitled to deference. See *School Comm. of Springfield* v. *Board of Educ.*, 362 Mass. 417, 441 n.22 (1972); *International Bhd. of Elec. Workers* v. *Western Mass. Elec. Co.*, 15 Mass. App. Ct. 25, 28 (1982). The language of G. L. c. 152, § 48, applies whether the same or another insurer is involved.

The board's interpretation is also clearly contrary to the policy behind the statute. A proposed amendment to G. L. c. 152, § 48, was filed by the Massachusetts AFL-CIO, and passed in 1977, apparently in response to *Carrier* v. *Shelby Mut. Ins. Co.*, 370 Mass. 674 (1976), a case with facts somewhat similar to this case. See *Condon* v. *Haitsma*, 325 Mass. 371, 373 (1950) ("it . . . must be presumed the Legislature knew preexisting law and the decisions of this court"). In *Carrier*, this court held that an employee who had settled a knee injury claim with one insurer was barred from recovering compensation benefits from a different insurer for an earlier hand injury for the same period of incapacity covered by the lump-sum settlement of the knee injury. *Carrier* was criticized because it appeared to expand both the successive insurer rule and the concept of double recovery in the context of workers' compensation. See Locke, Workmen's Compensation Law, 1976 Ann. Survey Mass. Law § 3.1, at 61-62; L. Locke, Workers' Compensation § 614, at 738 (2d ed. 1981).

The 1977 amendment to G. L. c. 152, § 48, eliminated the possibility that *Carrier* would have the effect of preventing employees from recovering for one injury when they have settled by a lump-sum agreement a separate and distinct injury. The Legislature did not intend, as the board apparently believes, to alter the holding of this decision only in cases when different insurers are involved and not when the same insurer is involved.

The board's construction of the statute would lead to results which are both arbitrary and inequitable. The right of

an employee to compensation for an injury, after he has settled in a lump sum a different injury, would depend on the identity of his employer's insurance carrier. Employees would be vulnerable to the fortuity of their employers' choice of workers' compensation carriers. Many employers do not even have a choice, as they are assigned their carriers through the assigned risk pool. See G. L. c. 152, § 65A (1988 ed.). The statute was not intended to subject employees' rights to such an arbitrary factor as the identity of the employer's insurance carrier, and such an intent should not be read into the statute. See *Attorney Gen.* v. *Hahnemann Hosp.*, 397 Mass. 821, 834 (1986).

Finally, we reject the board's assumption that the employee's shoulder injury award and his lump-sum settlement cover the same period of temporary total incapacity, and that its decision to offset one against the other was necessitated by "the fundamental principle barring double recovery." The assumption is faulty because it is not possible, under the lump-sum settlement agreement, to determine that there would, in fact, be double recovery. The release and settlement agreement, approved under G. L. c. 152, § 48, does not simply represent the commutation of future weekly incapacity benefits to which the employee was entitled. It releases Aetna "from all claims, damages, actions or causes of action for bodily injury, consequential damages and medical expenses" resulting from the back injury of May 2, 1980.

The amount of money agreed on may have been influenced by many factors, including issues of liability, the extent of future medical benefits, the possibility that Aetna might escape its full obligation as the result of a supervening injury or death, the attitude of the board, and the eagerness or reluctance of the employee to settle. See Locke, Workmen's Compensation Law, 1976 Ann. Survey Mass. Law, *supra* at § 3.1, at 50-59. Because of the uncertainty as to what the settlement amount actually represents, it is impossible to say

on this record that it duplicates the recovery under the shoulder injury award.[3]

The decision of the board is reversed, and the case is remanded to the board for further proceedings consistent with this opinion.

*So ordered.*

---

[3]The decision relied on by the board, *Mizrahi's Case*, 320 Mass. 733 (1947), did not involve a lump-sum settlement, and there was no doubt that the two claims involved were both for total disability. The reasoning and result in that case, thus, are not controlling.