CATHERINE E. ZUCCO *vs.* RICHARD M. KANE & another.[1]

No. 99-P-1365.

Hampshire. December 4, 2001. - June 6, 2002.

Present: GELINAS, DREBEN, & MILLS, JJ.

Further appellate review granted, 438 Mass. 1106 (2003).

*Workers' Compensation Act,* Settlement agreement, Lump-sum settlement. *Evidence,* Prior inconsistent statement. *Negligence,* Doctor, Independent contractor, Vicarious Liability. *Agency,* Independent contractor. *Medical Malpractice,* Vicarious liability.

At the trial of a medical malpractice action, the judge erred in permitting questioning of the plaintiff about her settlement agreement with her workers' compensation insurer and in admitting portions of it in evidence as prior inconsistent statements or admissions by the plaintiff, where the statements contained in the agreement, which were drafted by counsel for the insurer, embodied conclusions about liability under the law of workers' compensation, were not indicative of what the plaintiff had actually admitted, and were not a fair challenge to the plaintiff's credibility [81-85]; where the statements were not cumulative of other evidence and went to a central issue in the case, the error was prejudicial and required reversal of the judgment [85].

A company providing medical examinations for insurance companies could not be held vicariously liable for the negligent conduct of a doctor during the course of such an examination, where the company, although exercising control over the format of the doctor's medical reports and record-keeping, did not have any right of control over the doctor's conduct in the course of his clinical activities. [85-87]

CIVIL ACTION commenced in the Superior Court Department on October 17, 1991.

The case was tried before *Mary-Lou Rup,* J.

*David A. Wojcik* for the plaintiff.

*Michael K. Manning* for Richard M. Kane.

*Brian A. Gillis* for IME, Inc.

DREBEN, J. This negligence action was brought by the plaintiff

---

[1] IME, Inc.

against an orthopedic surgeon, Dr. Richard Kane, and IME, Inc. (IME), a company providing medical examinations for insurance companies and others.[2] At trial, the judge admitted, over objection, portions of the plaintiff's settlement agreement with her employer's workers' compensation insurer as evidence of prior inconsistent statements or admissions by the plaintiff. A jury found the physician not negligent.[3] The plaintiff appeals, claiming the judge erred in permitting questioning of the plaintiff about the agreement and in admitting it in evidence. She also appeals from the judge's denial of her motion for a new trial on the same ground. We hold that there was error in the admission of the agreement and reverse the judgment as to Dr. Kane. In view of our action, we reach the cross appeal of IME, which claims that its motion for a directed verdict should have been granted, as Dr. Kane was an independent contractor over whose medical judgment IME exercised no control. We agree.

On April 4, 1990, while working as a charge nurse at the Loomis House Nursing Home, the plaintiff twisted her left foot as she was walking up a flight of stairs. She was unable to return to work for some time, and at the request of her employer's workers' compensation insurer, she was examined by Dr. Kane in October, 1990. She claims that Dr. Kane used excessive force in examining her foot, and that as a result of such excess she suffered serious injury, a condition diagnosed as reflex sympathetic dystrophy syndrome (RSD).

1. *Evidence at trial.* Before turning to the settlement agreement and its introduction in evidence, we first summarize the evidence at trial, quoting for the most part the judge's memorandum denying the plaintiff's motion for a new trial.[4]

"The jury heard contradictory evidence as to the treatment rendered to the plaintiff by Dr. Kane. The plaintiff testified that

---

[2]Originally, the plaintiff also filed a count of assault and battery against Dr. Kane, and her husband claimed loss of consortium. Those claims were abandoned prior to trial.

[3]Accordingly, judgment entered for both defendants, as the claim against IME was that it was vicariously liable for Dr. Kane's negligence.

[4]The plaintiff's motion for a new trial urged two grounds: the verdict was against the weight of the evidence and there was error in the admission of the agreement.

during an October, 1990 independent medical examination performed at IME's offices at the request of her workers' compensation provider, Dr. Kane manipulated her foot with force and without regard to her complaints of pain. Dr. Kane testified that he applied moderate pressure in examining the plaintiff's foot in order to diagnose its condition; he denied he was negligent."

Similarly, the jury heard conflicting testimony from the experts. The expert medical opinions of the plaintiff's treating physician and of her treating podiatrist were that Dr. Kane's examination of the plaintiff's foot deviated from the standard of care for physical examination of an injured fourth metatarsal and that his negligent examination proximately caused the plaintiff to develop RSD.

"The defendants introduced the testimony of three expert medical witnesses. Dr. Mark Lewis[5] offered his opinion that the plaintiff suffered from RSD before Dr. Kane examined her. Dr. Paul Gross [a neurologist] testified that Dr. Kane's examination of the plaintiff complied with the appropriate standard of medical care. While Dr. Gross could not testify with certainty whether the plaintiff actually suffers from RSD, he testified that if she does have the condition, she suffered from it before Dr. Kane's examination. Dr. Kuhrt Wieneke [an orthopedic surgeon] also testified that Dr. Kane complied with the appropriate standard of care in examining the plaintiff and that the plaintiff suffered from RSD before Dr. Kane's examination."

As can be seen from the foregoing summary, the defendants placed great emphasis on their claim that the plaintiff's RSD had preceded Dr. Kane's examination.[6] The question of Dr. Kane's negligence, litigated in terms of whether he had exerted "a lot of" force during the examination as testified to by the

---

[5]Dr. Lewis is an anesthesiologist who also has a specialty in pain management.

[6]The plaintiff's treating physician, in explaining RSD, testified that " '[r]eflex' means it's triggered off by either a particular injury or a nerve injury." Dr. Lewis also testified that RSD is usually due to an injury, but added that it need not be.

plaintiff,[7] or only "moderate" force as claimed by Dr. Kane, obviously depended on the jury's assessment of their credibility.

2. *The settlement agreement and references to other documents.* Claiming that the settlement agreement submitted to the Department of Industrial Accidents in January, 1995, contained admissions or prior inconsistent statements by the plaintiff, the defendants sought to introduce the agreement to challenge her veracity.[8] The plaintiff vigorously opposed its admission, filing a motion in limine and making objections at each juncture. The judge, however, determined that the evidence was admissible to show prior inconsistent statements or admissions.

Prior to cross-examination of the plaintiff on her applications for benefits, and on the agreement, the judge instructed the jury that any workers' compensation benefits received by the plaintiff for some or all of her injuries had no bearing on the damages, if any, the plaintiff suffered as a result of the defendants' conduct. She then continued:

> "The fact that you may hear any testimony regarding either application for such benefits or any, what is a called, lump sum agreement between her and her employer's insurer is being introduced in this particular case for a very limited purpose, and you may only consider it for this purpose: That is, if any of the statements made by Ms. Zucco were in any way inconsistent with her testimony during the course of this trial. You may consider that on the issue of her credibility and how much weight or importance you give to her testimony.
>
> "Additionally, if there are any statements made in the course of either the application or the ultimate lump sum agreement, you may consider those particular matters as

---

[7]She testified also, "I felt the pressure and the pain. I felt like my foot was being crushed."

[8]As will be discussed more fully later, the defendants claimed that the agreement included statements that there was no third party action pending; that the plaintiff's medical condition was good in January, 1995; and, most important, that the date of the plaintiff's injury which caused the RSD was April 4, 1990, and that the cause of her RSD was her injury at work.

admissions by her; but again, only with respect to her claim against these two Defendants."[9]

The plaintiff was then questioned, without objection, by counsel for IME concerning two documents which the trial judge did not allow to be introduced in evidence. The first was a document written by a Social Security Administration interviewer in connection with the plaintiff's application for disability benefits, summarizing a 1991 conversation with the plaintiff. The summary quoted the plaintiff as saying "that she does have a home health aide come in on a daily basis since the RSD has started, which was in 4/90."[10] The second item on which the plaintiff was cross-examined was a 1994 application by the plaintiff for workers' compensation benefits listing the date of the injury to be "4/4/90" and describing the injury as "[i]njured left foot, reflex sympathetic dystrophy."

The plaintiff was then cross-examined, over objection, concerning the lump sum settlement agreement which she had signed in January, 1995, a cross-examination which consisted primarily of reading the agreement and having the plaintiff acknowledge the reading was correct. Among the items read were the following (the italicized portions are preprinted parts of the agreement form):

"*Diagnosis* Reflex sympathetic dystrophy."

"*Present Medical Condition* Good"

---

[9]In her charge to the jury at the end of the case, the judge again referred to this testimony, pointing out that the jury could take into account prior inconsistent statements of witnesses in determining how much belief and importance should be given to their testimony, but as to parties the jury could use prior inconsistent statements as an admission, as proof of the facts contained in them. With specific reference to the application for workers' compensation benefits or any receipt of such benefits, the judge instructed that the evidence could be considered on the issue of the plaintiff's physical and medical condition before the examination by Dr. Kane, and could also be considered on the "issues relating to the credibility or the believability" of the persons who testified.

[10]The plaintiff, however, testified that she had told the interviewer that the RSD began on "10/26/90" and, on redirect, supported her testimony by reading from a document (also not allowed in evidence) dated January, 1991, prepared by her and supplied to the Social Security Administration. It stated that IME's "doctor's forceful manipulation of the left foot resulted in" RSD.

*"Third Party Action* No"

*"Give Brief History* . . . On 4/4/90, this then 25 year old L.P.N. alleges to have injured her ankle when she twisted her foot while walking up a flight of stairs. The case was accepted. Section 34 benefits have been paid to date. The employee received conservative treatment for a diagnosed left foot sprain. When symptoms persisted, she was referred to a neurologist. Diagnosis was reflex sympathetic dystrophy. Treatment has consisted primarily of medications and nerve blocks. The employee has reached maximum medical improvement."

*"This payment is received in redemption of the liability for all weekly payments now or in the future due me under [the] Worker's Compensation Act for all injuries received by* me; Catherine Zucco *on or about* April 4, 1990 *while in [the] employ of* Loomis House."[11]

The redacted agreement was subsequently introduced, over the plaintiff's objection, as an exhibit.[12]

3. *Admissibility of settlement agreement.* The plaintiff claims that questioning her with respect to the settlement document, and its subsequent admission, in order to suggest that her RSD was caused by the April 4, 1990, injury and not by Dr. Kane's October, 1990, examination, was prejudicial error and a mischaracterization of her statements. In general, as the plaintiff claims, both under settled legal principles, see *Murray* v. *Foster,* 343 Mass. 655, 660 (1962); *Morea* v. *Cosco, Inc.,* 422 Mass. 601, 602-603 (1996), and under workers' compensation law, see *Ricciutti* v. *Sylvania Elec. Prod. Inc.,* 343 Mass. 347, 349 (1961), compromise or settlement agreements are not admissible. See Liacos, Massachusetts Evidence § 4.6, at 187 (7th ed. 1999) ("offer to compromise a dispute is not admissible in evidence as an admission of the validity or invalidity of the claim"). There is, however, precedent for allowing statements

---

[11]Also read were the following: "*I am fully satisfied with and request approval [of] this settlement. This agreement has been translated to me in my native language of* English. I understand that this settlement is for all injuries, illnesses or conditions I may have, whether known or unknown to me at this time."

[12]The agreement was redacted by the parties and additionally by the judge. None of the provisions at issue here was redacted.

of fact made during negotiations to be admissible. See *Wagman* v. *Ziskind*, 234 Mass. 509, 511 (1920); *Puzo* v. *Puzo*, 342 Mass. 775, 775 (1961). See also *Calvin Hosmer, Stolte Co.* v. *Paramount Cone Co.*, 285 Mass. 278, 281-282 (1934). See generally Liacos, Massachusetts Evidence § 4.6, at 189 (7th ed. 1999).[13]

A number of considerations lead to the conclusion that the statements in the lump sum agreement are not admissible under the rule of these cases. First, Proposed Mass.R.Evid. 408, set forth in the margin,[14] which is now in accord at least in some respects with Massachusetts law, see *Morea* v. *Cosco, Inc.*, 422 Mass. at 604 & n.4, does not permit statements "to prove liability for, *invalidity of*, or amount of the claim or *any other claim*" (emphases supplied). The workers' compensation statute, in G. L. c. 152, § 48(5), set forth in the margin,[15] may also preclude admission of such statements as it provides that a lump sum agreement shall "affect only the insurer and employee who are parties to such lump sum agreement and *shall not af-*

---

[13]As Liacos states, citing the foregoing cases, "While both Proposed Mass. R.Evid. 408 and Fed.R.Evid. 408 provide that admissions of fact made in the course of the compromise negotiations are also inadmissible, Massachusetts case law is to the contrary." Liacos, Massachusetts Evidence § 4.6, at 189 (7th ed. 1999) (footnote omitted). But see Young, Pollets, & Poreda, Evidence § 408.1, at 226 (2d ed. 1998), suggesting that only "independent facts" unrelated to the negotiation process are admissible. The meaning of "independent fact," however, also causes problems. See Leonard, The New Wigmore: A Treatise on Evidence § 3.5.2, at 3:49-3:51 (1998).

[14]Proposed Rule 408 reads as follows:

"COMPROMISE AND OFFERS TO COMPROMISE

"Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for, invalidity of, or amount of the claim or any other claim. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution."

[15]Section 48(5) of G. L. c. 152, as amended by St. 1991, c. 398, § 75, provides as follows: "Whenever a lump sum agreement or payment has been approved by the reviewing board in accordance with the terms of this section, such agreement shall affect only the insurer and employee who are parties to such lump sum agreement and shall not affect any other action or proceeding arising out of a separate and distinct injury resulting in an incapacity whether the injury precedes or arises subsequent to the date of settlement."

*fect any other action . . . arising out of a separate and distinct injury* resulting in an incapacity" (emphasis supplied). In another context this provision has been construed to be unambiguous. See *Kszepka's Case*, 408 Mass. 843, 846 (1990). At the least, the statute casts doubt on whether the plaintiff's lump sum agreement can "affect" this action which arises out of an alleged "separate injury" resulting in an alleged "incapacity."

We need not, however, determine whether the plaintiff's statements in the lump sum settlement agreement are independently excludable under Proposed Mass.R.Evid. 408 or G. L. c. 152, § 48(5), because we conclude that the considerations prompting both the rule and the statute, when coupled with the lack of probative force of the admissions in the context of the workers' compensation law, require their exclusion. See *LePage* v. *Bumila*, 407 Mass. 163, 164-165 (1990), where the court stated the following, albeit in reference to conduct, which is often more ambiguous than a statement: although "[i]t's well established that an admission by a party may be introduced in evidence against that party[,] . . . [f]or a party's conduct to be admissible as an 'admission,' . . . the conduct which is offered as an admission must, in the normal course of events, be indicative of whether the party against whom it is offered actually so admitted."[16]

An examination of the plaintiff's statements contained in the lump sum agreement, when looked at in the context of workers' compensation law, shows that they are not "indicative" of what the plaintiff "actually admitted." We turn first to the response on the document indicating that no third party action had been brought. In an uncontradicted affidavit (a pretrial motion exhibit), counsel for the employer's workers' compensation insurer stated that she was the one who had prepared the lump

---

[16]In the cited case the court held that a decision of a defendant to pay a $40 traffic fine and not to appeal a finding that he failed to stop for a red light could not be admitted as an admission. Often such acquiescence is just a convenient and inexpensive method of ending the enforcement action, and it would be unfair to allow the payment to be used as an admission in a later proceeding. See *LePage* v. *Bumila*, 407 Mass. at 165.

sum agreement,[17] and that she had failed to indicate that there was a third party action despite the fact that the insurer knew the plaintiff had a lawsuit pending against Dr. Kane arising out of an incident in October, 1990, and had given notice to his counsel that it was placing a lien on the plaintiff's recovery.[18] In these circumstances, it was not unreasonable for the plaintiff to assume that counsel for the insurer had, perhaps for technical or legal reasons, correctly answered the question on the form as to whether a third party action had been brought.

That the agreement's description of the plaintiff's history and the diagnosis does not mention the trauma the plaintiff attributed to Dr. Kane is also, in the context of the settlement agreement, not indicative of an admission or a lack of veracity. Under workers' compensation law, the consequences — the alleged RSD — of the subsequent examination by Dr. Kane requested by the insurer are considered caused by the original April injury and are compensable by the employers' insurer. This is true even if the examination was performed negligently. *Luongo's Case*, 313 Mass. 440, 442 (1943). See Locke, Workmen's Compensation § 223, at 261-262 (2d ed. 1981), and cases cited. See also *Retirement Bd. of Brookline* v. *Contributory Retirement Appeal Bd.*, 33 Mass. App. Ct. 478, 481-482 (1992). Thus, not only was the agreement drafted by counsel for the insurer, who was aware of the claims against Dr. Kane, but the statements embodied conclusions about liability under the law of workers' compensation, not untutored assessments of cause and effect. Since for purposes of compensation under that law, the RSD was a consequence of the April 4 injury, the introduction of the "admissions" and "inconsistent statements" contained in the settlement agreement were not indicative of what the plaintiff

---

[17]That counsel for the insurer had drafted the agreement was brought to the attention of the trial judge before the matters were introduced in evidence. The judge, however, in her memorandum denying a new trial, mistakenly stated that the plaintiff's agent, her workers' compensation attorney, prepared the agreement, and that the plaintiff signed the agreement her attorney prepared.

[18]The insurer would have a lien on any recovery against Dr. Kane, to the extent it had made payments. See G. L. c. 152, § 15.

had actually admitted and were not a fair challenge to the plaintiff's credibility.[19]

We reject the defendants' claim that the evidence was not prejudicial, but only cumulative of the other evidence, admitted without objection and not at issue on appeal, concerning the plaintiff's applications for workers' compensation and Social Security disability benefits.[20] The settlement agreement received far more emphasis at trial than the applications and was an exhibit accompanying the jury in their deliberations. In the context of the judge's instructions, if the statements in the agreement had been viewed by the jury as admissions, they would certainly have prejudiced the plaintiff's case.

We also reject the defendants' argument that since the admissions involved the issue of causation, a question not reached by the jury as they found Dr. Kane not to be negligent, the plaintiff was not so prejudiced as to require reversal. See *Drake* v. *Goodman*, 386 Mass. 88, 94 (1982). In the present case the issue of Dr. Kane's negligence was so tied to the plaintiff's credibility that we cannot say that the erroneous and systematic emphasis on her seemingly glaring "admissions" and "inconsistent statements" in the settlement agreement did not affect the finding of no negligence.[21]

4. *IME's cross appeal.* At the close of the plaintiff's case, and again at the close of the evidence, IME moved for a directed verdict on the plaintiff's claim of vicarious liability, which was based on the plaintiff's contention that Dr. Kane was IME's

---

[19]That the settlement agreement said the plaintiff's medical condition was "good" was not significantly inconsistent with her trial testimony, as the plaintiff testified that she worked forty hours a week (at a desk job) and, in addition, as a visiting nurse giving insulin injections. She did, however, claim at trial that she still had pain, but less frequently and less intense than before.

[20]It may be that the plaintiff's counsel considered his objection to the settlement agreement as covering the application for workers' compensation benefits, as the motion in limine also mentioned the application. We do not base our decision, however, on whether there was an objection.

As indicated earlier, in addition to the Social Security document prepared by a third person, there was also the document prepared by the plaintiff for Social Security purposes, which indicated that Dr. Kane's manipulation caused the RSD.

[21]The judge's instructions, as described earlier, see note 9, *supra*, and accompanying text, also laid stress on the use of the statements and admissions to determine the credibility of parties.

agent, servant or employee. The trial judge denied the motions, and the defendant argues that there was insufficient evidence for a jury to find IME vicariously liable.

While no general rule can be stated for determining vicarious liability in the medical area as the cases are "fact specific," *Hohenleitner* v. *Quorum Health Resources, Inc.*, 435 Mass. 424, 438 (2001), some broad outlines were set forth in *Kelley* v. *Rossi*, 395 Mass. 659, 661 (1985): "The right to control an agent's activities has been the guiding principle in deciding cases involving an assertion of vicarious liability against the agent's principal." While a physician is not always an independent contractor, "the very nature of a physician's function tends to suggest that in most instances he will act as an independent contractor. Another person, unless a physician himself, would have no right (or desire) to exercise control over the details of the physician's treatment of a patient; the profession is distinct and requires a high level of skill and training; and the physician must use independent judgment." *Id.* at 662.

The plaintiff points to the following evidence in the record on appeal to support the conclusion that a jury would be warranted in finding that IME exercised sufficient control over its physicians for it to be vicariously liable. IME provided the examining rooms, the equipment, and the staff support for the examinations. It scheduled the appointments and selected the physician who would examine a particular patient, although a physician had the right to refuse to see a given patient. IME had a format for the physicians to follow in drafting their reports, and reviewed those reports to make sure that all the questions were answered. IME kept the files on the patients examined and provided all the clerical help. It paid the physicians a fee for each examination. It set rules prohibiting the physicians from providing treatment for, or discussing the results of their examinations with, the examinees.[22]

The foregoing indicates that IME exercised control over the format of the reports and the record-keeping for the examination.

---

[22]We do not consider material cited and quoted by the plaintiff that is not contained in the record before us. See *Kunen* v. *First Agric. Natl. Bank of Berkshire County*, 6 Mass. App. Ct. 684, 690-691 (1978). We note that even if we were to consider it, our conclusion would not be different.

The appropriate degree of IME's right of control for purposes of vicarious liability, however, depends on the conduct which is claimed to be negligent, in this case the degree of care and skill in examining a person with the plaintiff's symptoms that would have been used by the average orthopedic surgeon. See *Hohenleitner* v. *Quorum Health Resources, Inc.*, 435 Mass. at 436, 438 n.11. "Vicarious liability for th[e] failure [to use appropriate care] should be premised on the right to control the physical conduct of [Dr. Kane] in the course of [his examination of patients]," *id.* at 436, in short, his clinical activities.

When the question of control is posed in this form, there is no question that IME did not exercise or have such right of control. There were no physicians supervising Dr. Kane or even setting the procedures and policies. See *Smith* v. *Steinberg*, 395 Mass. 666, 668 (1985) (trustees adopted rules relative to the operation and governance of the group practice, but they did not deal with control over the individual physicians in their practice of medicine). See also *Paradoa* v. *CNA Ins. Co.*, 41 Mass. App. Ct. 651, 653 (1996), where it was stated (albeit in dictum) that a doctor in a similar position with a group arranging for medical examinations was an independent contractor for whose negligence, the group, presumably, would not be vicariously liable.

In sum, the judgment on count I (the only count before us) is affirmed as to IME for the reasons set forth herein, and is reversed as to Richard Kane. The matter is remanded for further proceedings in accordance with this opinion.[23]

*So ordered.*

---

[23]We deny the plaintiff's request for an award of the costs of appeal.