Catherine E. Zucco vs. Richard M. Kane & another.[1]

Hampshire. April 7, 2003. - June 2, 2003.

Present: Marshall, C.J., Ireland, Spina, Cowin, Sosman, & Cordy, JJ.

*Workers' Compensation Act,* Settlement agreement, Lump-sum settlement. *Evidence,* Hearsay, Settlement offer. *Negligence,* Doctor.

At the trial of a medical malpractice action, the judge properly admitted statements made by the plaintiff in a lump-sum settlement agreement with her workers' compensation insurer that were contrary to the plaintiff's testimony in the malpractice action, where it was well within the judge's discretion to conclude that the plaintiff's signature on the lump-sum agreement indicated her adoption of the agreement's contents; where plaintiff's counsel could have, but did not, question his client during redirect examination to allow her to explain the apparent contradiction between the factual contents of the agreement and her testimony at trial; where it was within the discretion of the judge to admit certain answers to administrative questions and the plaintiff's treatment history contained within the agreement as evidence of the truth of the facts the statements contained; where the admissions at issue were made on the face of a settlement document, not during the negotiations that produced the agreement; and where G. L. c. 152, § 48(5), did not require the exclusion of the agreement's contents. [507-511]

Civil action commenced in the Superior Court Department on October 17, 1991.

The case was tried before *Mary-Lou Rup,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Michael K. Manning* for Richard M. Kane.

*Brian A. Gillis* for IME, Inc.

*David A. Wojcik* for the plaintiff.

Cowin, J. We are asked to decide whether statements the plaintiff made in a settlement agreement may be admitted against her when she testifies to contrary facts in a subsequent action against a third party. We agree with the trial judge that the statements were admissible and therefore affirm.

[1]IME, Inc.

1. *Background.* The plaintiff, Catherine E. Zucco, was a charge nurse at the Loomis House, a nursing home in Holyoke, when she twisted her left foot while ascending a flight of stairs. She received medical treatment but was unable to return to work for quite some time. She applied for and received workers' compensation benefits. While receiving benefits, the plaintiff was requested by the workers' compensation insurer to undergo a medical examination by Dr. Richard Kane at the offices of IME, Inc. This action arises from that examination. The plaintiff claims that Dr. Kane used great force, causing her serious, permanent, and debilitating injury, and that IME, as Dr. Kane's employer, was vicariously liable for his conduct. Eventually, the workers' compensation insurer sought to discontinue benefits, and the plaintiff settled her claim in January, 1995. She signed a lump-sum settlement agreement, prepared by the insurer and submitted to the Department of Industrial Accidents. It is the admissibility of a redacted version of this settlement agreement in the suit against Dr. Kane and IME that is at issue in this case.

At trial, the plaintiff claimed that Dr. Kane's negligent examination of her foot caused her to develop reflex sympathetic dystrophy (RSD).[2] There was contradictory evidence as to whether Dr. Kane was negligent and whether he caused the RSD. The plaintiff testified that Dr. Kane disregarded her complaints of pain when he forcibly manipulated her foot. Dr. Kane testified that he applied only moderate pressure to diagnose the plaintiff's condition. The experts, too, disagreed. The plaintiff's experts opined that Dr. Kane's examination deviated from the standard of care and proximately caused the plaintiff's RSD. The defendants' experts stated that Dr. Kane's examination comported with the appropriate standard of care and concluded that the plaintiff suffered from RSD before Dr. Kane examined her.

During cross-examination of the plaintiff, the defendants

---

[2]The complaint also alleged assault and battery by Dr. Kane and included a claim by the plaintiff's husband for loss of consortium. The parties stipulated to the dismissal of these counts before trial. In addition, at the close of the plaintiff's case, the judge ordered the entry of a directed verdict against the plaintiff on her claim that IME was negligent in hiring or retaining Dr. Kane. The plaintiff does not challenge this ruling on appeal.

sought to question her concerning the contents of the workers' compensation lump-sum agreement. The plaintiff objected, maintaining that the document was inadmissible under both common and statutory law. After the judge ruled that portions of the agreement were admissible, the parties agreed on a redacted version that omitted certain references to the settlement amount and the compromise that produced it. The plaintiff preserved her previous objection that the entire document was inadmissible. Prior to resumption of cross-examination, the judge instructed the jury that any workers' compensation benefits the plaintiff received had no bearing on her damages, if any. Further, the judge said:

> "The fact that you may hear any testimony regarding either application for such benefits or any . . . lump-sum agreement between [the plaintiff] and her employer's insurer is being introduced in this particular case for a very limited purpose, and you may only consider it for this purpose: That is, if any of the statements made by [the plaintiff] were in any way inconsistent with her testimony during the course of this trial. You may consider that on the issue of her credibility and how much weight or importance you give to her testimony.

> "Additionally, if there are any statements made in the course of either the application or the ultimate lump-sum agreement, you may consider those particular matters as admissions by her; but again, only with respect to her claim against these two Defendants."

The defendants used the redacted settlement document[3] to

---

[3]The redacted settlement agreement states in relevant part as follows, with the preprinted portions of the agreement italicized:

"*Diagnosis* Reflex sympathetic dystrophy"

"*Present Medical Condition* Good"

"*Third Party Action* No"

"*Give Brief History and Reasons Why Settlement is in the Employee's Best Interest* . . .

"On 4/4/90, this then 25 year old L.P.N. alleges to have injured her ankle when she twisted her foot while walking up a flight of stairs. The

demonstrate that, contrary to her trial position, the plaintiff had at one time asserted that her RSD resulted from her April 4, 1990, work injury, and that her medical condition at the time of the settlement was "good." In that document the plaintiff also asserted that there was no third-party action pending; in fact, she had filed the complaint in this case over three years earlier. The redacted agreement subsequently was admitted in evidence.

During her charge to the jury, the judge gave the following additional instruction:

> "I remind you that your purpose in this case is not to decide whether [the plaintiff] is or was entitled to receive any sort of workers' compensation benefits or other benefits related to that April, 1990, injury that she suffered. You are not to consider in any way the fact that she received any workers' compensation benefits with regard to issues of liability in this case or with regard to any damages that you might award in this case. That's not relevant in any way, and you may not consider it.

> "The information on that particular issue, with respect to [the plaintiff's] application for workers' compensation benefits, or any receipt of workers' compensation benefits, and the issues surrounding that, were introduced during this trial only for the following reasons, and that is for very limited purposes: First, this evidence was introduced to explain to the jurors, and to put into context the reason why [the plaintiff] went to see [the defendant doctor] in

---

case was accepted. Section 34 benefits have been paid to date. The employee received conservative treatment for a diagnosed left foot sprain. When symptoms persisted she was referred to a neurologist. Diagnosis was reflex sympathetic dystrophy. Treatment has consisted primarily of medication and nerve blocks. The employee has reached maximum medical improvement."

"*This payment is received in redemption of the liability for all weekly payments now or in the future due me under Worker's Compensation Act for all injuries received by* me; Catherine Zucco *on or about* April 4, 1990 *while in the employ of* Loomis House."

"*I am fully satisfied with and request approval of this settlement. This agreement has been translated to me in my native language of* English. I understand that this settlement is for all injuries, illnesses or conditions I may have, whether known or unknown to me at this time."

the first place, and why he examined her; second, it was introduced for your consideration on the issue of her physical and medical condition before that examination on October 26th, 1990; third, it was also introduced on the issues, or on issues relating to the credibility or the believability of the various witnesses who have testified and certain other exhibits that have been introduced during the course of this trial. So I remind you, those are the only reasons you may consider that."

The jury found that Dr. Kane was not negligent, and therefore did not reach the issue whether IME was vicariously liable. Judgment was entered for the two defendants. The plaintiff appealed, arguing that it was error both to allow testimony concerning the lump-sum agreement and to admit the redacted version in evidence. (She also appeals from the judge's denial of her motion for a new trial on the same ground.) IME cross-appealed, arguing that, even if the verdict in favor of Dr. Kane were reversed, the verdict in its own favor should not be disturbed because the judge improperly denied IME's motion for a directed verdict on the issue of vicarious liability. The Appeals Court reversed the judgment as to Dr. Kane, finding error in the admission in evidence of the redacted settlement agreement, but affirmed the judgment as to IME, holding that there was no vicarious liability as a matter of law. *Zucco* v. *Kane*, 55 Mass. App. Ct. 76 (2002). We granted Dr. Kane's application for further appellate review.

2. *Discussion.* The plaintiff argues that she was prejudiced by improper references to the redacted lump-sum agreement. She maintains that the document's contents were hearsay and that their use was both an inadmissible reference to a settlement agreement and proscribed by the workers' compensation statute, specifically G. L. c. 152, § 48 (5). We do not disturb a judge's decision to admit evidence absent an abuse of discretion or other legal error. See *Wilson* v. *Honeywell, Inc.*, 409 Mass. 803, 809 (1991); J.R. Nolan & C.A. Caldeira, Appellate Procedure § 1:4 (2d ed. 2002) ("A trial judge has an abundance of discretion in ruling on evidence. The appellate court does not decide how it would have ruled if faced with the same objection"). The judge has made no error of law.

With regard to the hearsay objection, the judge ruled that the

contents of the lump-sum agreement constituted an admission by a party opponent.[4] Although the plaintiff points out that the text of the agreement was prepared by counsel for the employer's workers' compensation insurer, the critical question is not who authored the document, but whether the plaintiff adopted its contents as her own statement. "The written statements of a third person may be so dealt with by the party that his assent to the correctness of the statements may be inferred, and they would thus by adoption become his own statements." 4 J. Wigmore, Evidence § 1073 (Chadbourn rev. ed. 1972). See *Commonwealth* v. *Eastman,* 1 Cush. 189, 215 (1848) (documents written by third party admissible against defendant if adopted "by some act"). It was well within the judge's discretion to conclude that the plaintiff's signature on the lump-sum agreement indicated her adoption of the agreement's contents. See *McQueeney* v. *Wilmington Trust Co.,* 779 F.2d 916, 930 (3d Cir. 1985) (plaintiff's signature on records prepared by employer was adoption of records' contents); *United States* v. *Felix-Jerez,* 667 F.2d 1297, 1299 (9th Cir. 1982) (signature on document prepared by another sufficient proof that statements in document are defendant's own). See also *Hull* v. *Attleboro Sav. Bank,* 33 Mass. App. Ct. 18, 24 (1992) ("One who signs a writing that is designed to serve as a legal document . . . is presumed to know its contents").

The Appeals Court held that the judge abused her discretion in admitting the redacted lump-sum agreement because the statements it contained "were not a fair challenge to the plaintiff's credibility." *Zucco* v. *Kane, supra* at 85. The court hypothesized that the plaintiff may have failed to detect errors made by the attorneys who prepared it, and may have assumed also that the portion of the document attributing her RSD to her initial work accident was legally (if not factually) correct. *Id* at 84-85. While there may, in fact, have been cogent explanations for the apparent inconsistencies between the agreement and the plaintiff's testimony, this possibility does not render the document inadmissible. "As with all Evidentiary admissions, it is

---

[4]The judge also ruled that the agreement was admissible for impeachment purposes as a prior inconsistent statement. Because we hold that the evidence was an admission, we do not reach this alternative theory.

always open to the party to give evidence that the pleading or other admissive declaration made by counsel was made or filed upon incorrect information. This will go to the weight of the admission evidence, and not to its admissibility." W.G. Young, J.R. Pollets & C. Poreda, Evidence § 801.11 (2d ed. 1998). Counsel could have questioned his client during redirect examination to allow her to explain the apparent contradiction between the factual contents of the agreement and her testimony at trial. He did not do so, and it is not our role to supply the plaintiff with testimony under the guise of an admissibility ruling.

Turning to the question of the lump-sum agreement's status as a settlement agreement, it is true that both the acceptance of a settlement offer and the offer itself are inadmissible to prove or disprove a defendant's liability. *Morea* v. *Cosco, Inc.*, 422 Mass. 601, 603-604 (1996). This evidentiary rule is designed to encourage settlements by limiting the collateral consequences of a decision to compromise. See *id.* at 604. As applied to acceptances, however, the rule does not extend beyond the fact of the settlement itself; admissions do not become privileged simply because they happen to be appended to a settlement. Even if the answers to administrative questions and the treatment history contained within the redacted agreement could somehow be considered "evidence of a settlement," *id.*, they were never presented to the jury as evidence of the plaintiff's willingness to compromise a questionable claim. It was therefore within the discretion of the judge to admit them as evidence of the truth of the facts the statements contained. See *id.*

The plaintiff also maintains (on appeal) that she was prejudiced by the inclusion in the redacted lump-sum agreement of language alluding to a compromise.[5] This argument is not properly before us. After the judge ruled that the defendants would be allowed to refer to the factual sections of the document, the parties agreed to redact portions that were not factual admissions. Although the plaintiff did object to the inclusion of the words, "I am fully satisfied," in the redacted version, she made no objection to the language she now challenges on appeal. If additional language

---

[5]The offending sentence reads as follows: "I understand that this settlement is for all injuries, illnesses or conditions I may have, whether known or unknown to me at this time."

should have been withheld from the jury, the plaintiff should have raised that issue with the judge. Her generalized objection "to the use in any manner of this document" (presumably on the ground that the agreement was inadmissible as a settlement) would not have alerted the judge that the plaintiff objected to specific language contained within the redacted agreement. The plaintiff's objection to the form of the redaction is therefore waived. See *Wagman* v. *Ziskind*, 234 Mass. 509, 511 (1920) ("No objection was made except to the letter as a whole. If the defendant had desired that any part of it should be withheld, or that its use should be restricted, he should have so requested").

In any case, the judge's comprehensive and repeated limiting instructions eliminated any possible prejudice from either the language in the redacted agreement or the mention of the settlement itself. See *Mailman's Steam Carpet Cleaning Corp.* v. *Lizotte*, 415 Mass. 865, 870 (1993) ("We presume that the jury followed the judge's instructions").

The plaintiff also points to language in Rule 408 of the Proposed Massachusetts Rules of Evidence and urges us to exclude her factual admissions as "[e]vidence of conduct or statements made in compromise negotiations . . . ." Despite the inclusion of this language in the proposed rule, we had, in the past, admitted statements made during settlement negotiations to prove unrelated facts. See, e.g., *Wagman* v. *Ziskind, supra* at 510-511. Nonetheless, even if we were to adopt the segment of the proposed rule pertaining to statements made during negotiations, it would not affect our decision in this case because the admissions at issue here were made on the face of a settlement document, not during the negotiations that produced the agreement. The distinction between statements made during negotiations and statements attached to a settlement document is critical. The primary argument in favor of excluding statements made during settlement negotiations is that the probative value of admitting them is outweighed by the public policy repercussions of discouraging compromise by penalizing candor between bargaining parties. See D.P. Leonard, Evidence § 3.5. 2, at 3:50 (1996); *Hernandez* v. *State*, 203 Ariz. 196 (2002). This logic does not apply, however, to factual statements included within the settlement document itself. While it may be difficult to negotiate without discussing the factual bases of a

dispute, a valid settlement can be drafted easily without referring to them. Admitting factual statements contained in settlement agreements, therefore, would only discourage factual statements, not the agreements themselves.

Finally, G. L. c. 152, § 48 (5), does not require the exclusion of the agreement's contents. This statute provides, in pertinent part, that a lump-sum agreement shall "affect only the insurer and the employee who are parties to such lump sum agreement and shall not affect any other action . . . arising out of a separate and distinct injury resulting in an incapacity." We explained the purpose of this language in *Kszepka's Case*, 408 Mass. 843 (1990). The paragraph quoted above was inserted by St. 1977, c. 776, to eliminate the possibility that our earlier decision in *Carrier* v. *Shelby Mut. Ins. Co.*, 370 Mass. 674 (1976), would bar employees from recovering for one injury when they have settled a separate injury claim by entering into a lump-sum agreement. See *Kszepka's Case, supra* at 846-847 & n.2. The statute is concerned with recoveries for various injuries. We have never suggested that § 48 (5) established an evidentiary privilege barring all reference to an agreement's contents, and we see no indication that the Legislature, by using the single word "affect," intended to create one.

As we find no abuse of discretion in the judge's evidentiary decisions and thus affirm the judgment for Dr. Kane, no issue remains concerning the vicarious liability of IME.

*Judgment affirmed.*

*Order denying motion*
*for a new trial affirmed.*