NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-1171

SHONTAE PRAILEAU

vs.

OLIVER IBE.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff, Shontae Praileau, was employed as an academic advisor at the Francis College of Engineering at the University of Massachusetts Lowell ("UML").  She was hired in the fall of 2016 and began work in January 2017.  During that time, the defendant, Oliver Ibe, held the position of Associate Dean of Undergraduate Studies and was Praileau's direct supervisor.  In June 2019, Praileau filed a nine-count complaint in the Superior Court alleging, among other things, that Ibe had subjected her to a hostile work environment on the basis of

sexual harassment, race,[1] and national origin, in violation of G. L. c. 151B, § 4. Following a jury-waived trial, the judge, having heard substantial evidence of sexual harassment, found in favor of Praileau and awarded her $250,000 in compensatory damages for emotional distress.[2] The judge further concluded that Ibe's "behavior was outrageous and the result of malicious motive and reckless indifference," and awarded Praileau an additional $100,000 in punitive damages. The total award, which included costs and prejudgment interest, was $440,092. In addition, the judge allowed Praileau's motion for attorney's fees pursuant to G. L. c. 151B, § 9, in the amount of $114,100.

Ibe appeals. He contends that the judge erred by admitting in evidence prejudicial hearsay, which included third-party opinions of his liability, and by permitting counsel for Praileau to cross-examine him about allegations that he sexually harassed other women (students) at UML and at Georgia Tech, where he previously had been employed. He further contends that certain records, which he characterizes as medical records, were not properly certified and that the award of attorney's fees was excessive. We affirm.

---

[1] Praileau is a Black woman and Ibe is a Black man from Nigeria.

[2] Ultimately, Praileau voluntarily dismissed counts two through nine and proceeded solely on count one, which alleged a hostile work environment on the basis of sexual harassment.

Background.  The judge could have found the following. Praileau's first day of work at UML was January 17, 2017.  That day, Ibe invited Praileau to lunch and the two went to a nearby restaurant.  During their conversation, Ibe asked Praileau inappropriate questions about her sexual orientation and preferences for sexual partners.  Soon thereafter, Ibe began to refer to Praileau as his "girlfriend," declared his love for her, and put what he referred to as their anniversary date on an office whiteboard.  Ibe also engaged in unwanted physical contact with Praileau.  He frequently hugged and touched her and kissed her on the forehead.  Ibe often insisted on walking Praileau to her car after work and called her at home.  During one telephone conversation he told Praileau that he wanted to "put a baby inside of [her]."  When Praileau attempted to avoid Ibe, he reminded her that he was her supervisor and could "erase" her at any time.  Ibe, who was married, also told Praileau that in his "Ibo" culture of Nigeria, which was his native country, older men like himself had multiple wives and relationships with younger women like Praileau.  These overtures and sexual advances caused Praileau stress and anxiety. However, because Praileau was a new employee and on probation for the first ninety days of her employment, she did not tell anyone about Ibe's behavior.

The situation changed for Praileau when she visited her family over the Easter holiday in April and told her relatives about Ibe's behavior. As she put it during her testimony at trial, that discussion "empowered" her to confront Ibe and also to seek out other Black women at UML to determine if they too had been subjected to sexual harassment by Ibe.

Praileau met with two women a few weeks later on May 5, 2017. One of them, Francine Coston, testified at trial.[3] Following this meeting, Praileau and Coston filed complaints against Ibe with UML's office of Equal Opportunity and Outreach ["EOO"]. That office conducted an investigation, which resulted first in a directive that Ibe have no contact with Praileau, and then with Ibe's removal from his position as Associate Dean. UML also relocated Praileau's office twice, but because Ibe still found ways to see her, UML transferred Praileau to a different department that was located in another area of campus. Praileau was upset by this decision because it required her to advise students who were studying the arts and humanities and not science and math, which were the subjects in which she had been trained and for which she had a passion.

---

[3] At trial, Coston relayed that she had similar experiences with Ibe, who referred to her as his "girlfriend" and told her that he loved her. She claimed that he touched her inappropriately on one occasion. Coston did not report Ibe's conduct to UML until after her conversation with Praileau in May 2017.

Ibe provided a different version of events at trial.  He denied the allegations of sexual harassment and explained that he did not contest his removal as Assistant Dean, which he acknowledged was predicated on UML's finding that he had engaged in sexual harassment, because he did not have the resources to fight the decision and not because the allegations were true.  In addition, Ibe explained that he did not challenge the allegations lodged by Praileau or Coston because "culturally" he could not insult "two [B]lack women" in public because he was from Nigeria "[where one does not] wash . . .dirty linens in public."  Although Ibe acknowledged that he called Praileau his girlfriend, and that he "joke[d]" with Praileau about the fact that she was on probation and that he could "erase" her, he maintained that he never touched or kissed Praileau and had no reason to do so.  He testified that Praileau's claim that he said he wanted to put a baby inside of her was "absolutely false."  In response to questions posed by Praileau's counsel, Ibe acknowledged that he had been previously employed at Georgia Tech as an assistant professor and left after he was accused of sexually harassing four women graduate students, but claimed that he was not fired, but rather was asked to leave and did so. He asserted that those allegations also were false and were the result of discrimination.

Discussion.  As an initial matter, with the exception of his claim that the award of attorney's fees was excessive, none of the issues Ibe raises on appeal were preserved by a proper objection at trial.[4]  Accordingly, the issues are waived, and we need not address them.  See Carey v. New England Organ Bank, 446 Mass. 270, 285 (2006).  Furthermore, contrary to Ibe's assertions, he does not raise any arguments of "public importance" that would prompt us to exercise our discretion to address his claims.  See Costo v. Brait Bldrs. Corp., 463 Mass. 65, 70 (2012).  Nor are we persuaded that we should excuse the absence of proper objections on the ground that Ibe represented himself at trial.  It is well settled that pro se litigants are held to the same standards as practicing attorneys.  E.g., Jackson v. Commonwealth, 430 Mass. 260, 264 (1999), cert. denied, 528 U.S. 1194 (2000).  Nevertheless, in the interests of justice, we have reviewed the record carefully, and discern no basis for granting Ibe a new trial.  In addition, we conclude that the judge did not abuse her discretion in calculating the appropriate amount of attorney's fees.

1.  Hearsay and opinion evidence.  Ibe first argues that two letters, one dated June 28, 2017, and one dated July 11, 2017, sent to him by the Director of EOO and the Dean of the

_____

     [4] Ibe either did not object or did so on grounds different from those he presses on appeal.

6

Francis College of Engineering respectively, were improperly admitted in evidence because they contained hearsay and the opinions of UML officials regarding his conduct.

The first letter, introduced as Exhibit 2, included a "[s]ummary of inquiry into concerns of inappropriate sexual behaviors presented by Ms. Shontae Praileau and Ms. Francine Coston."  The letter notified Ibe of EOO's conclusion that he had violated university policies regarding sexual harassment.[5] The second letter (or memorandum), introduced as Exhibit 3, informed Ibe that, effective immediately, he was to be removed from the position of Associate Dean and would return to the faculty as a professor.  The letter also instructed Ibe to not engage in any further misconduct and warned him of the consequences should he do so.

To be sure, both letters contained hearsay and conclusions reached by UML officials about Ibe's conduct.  However, the judge recognized this was so and explicitly ruled that she would not consider either letter for the truth of the matter asserted. When Praileau's counsel sought to introduce the first letter, Ibe objected on the ground that the letter was "confidential." The judge explained that confidentiality was not a proper basis

---

[5] The letter also addressed Ibe's inappropriate comments to Praileau regarding her race.  EEO concluded that Ibe had made the remarks, but that they did not rise to the level of a violation of the university's guidelines on nondiscrimination.

7

for excluding the letter, and then raised the issue of hearsay sua sponte. After a discussion with counsel, the judge admitted the letter in evidence solely "for the purpose of notice to the defendant, going to the defendant's state of mind and his knowledge but not for the truth of the matter asserted." Ibe objected to the second letter on the same ground, stating that it was confidential. This objection also was overruled, and the judge again explained that the letter would be considered solely for "the purpose of notice to the defendant as it goes to his state of mind and understanding at that time but not as to the truth of the matter asserted therein."

We discern no error in admitting the two letters for the limited purposes described by the judge. See Zucco v. Kane, 439 Mass. 503, 507 (2003) ("We do not disturb a judge's decision to admit evidence absent an abuse of discretion or other legal error"). The judge's rulings left no question that she considered the letters to have minimal probative value and that she would decide the issues before her without regard to the opinions expressed by EEO or the dean.

2. Testimony regarding additional allegations of sexual harassment. Ibe resigned from UML on July 30, 2019. Counsel for Praileau asked Ibe questions about his reasons for resigning and in doing so implied that Ibe resigned after a student accused him of sexual harassment. Counsel also asked questions

8

about Ibe's resignation from Georgia Tech decades earlier after Ibe was accused of sexual harassment by four women graduate students.  Ibe answered these questions and denied any wrongdoing.  Ibe now argues, in effect, that he should not have been asked these questions and that any testimony about allegations of sexual harassment concerning other women at Georgia Tech or UML had no probative value and was "devastatingly prejudicial" to his defense.

Even if we were to conclude, as Ibe contends we should, that the questions posed to him and his responses cast him in a bad light, that conclusion would not be a sufficient basis on which to grant Ibe a new trial.  As Ibe acknowledges, this was a jury-waived trial, and we therefore are less concerned about the possibility of prejudice than we otherwise would be.  See Rabinowitz v. Schenkman, 103 Mass. App. Ct. 538, 542 (2023).  In addition, the judge was acutely attuned to the possibility of prejudice and, in fact, admonished Praileau's counsel for soliciting testimony about Ibe's alleged sexual harassment of other women several times.  For example, at one point while counsel was questioning Ibe about whether he had touched a student inappropriately, the judge interjected stating that the evidence was not relevant and subsequently reminded counsel that questions are not evidence, "it is the answers that matter."  In addition, at a later point in the trial the judge explained that

9

she "allowed the Georgia Tech information [allegations of sexual harassment] to come in during the examination of Mr. Ibe based upon the idea that it was notice to him, that similar behavior had been demonstrated to him to be unacceptable and inappropriate."  Given these circumstances, we are confident that contrary to Ibe's assertions, the judge, as finder of fact, was not impermissibly influenced by the line of questioning he now challenges.  Indeed, the judge made this abundantly clear when she informed counsel:  "I am here to decide Ms. Praileau's case."

3.  Medical records.  Praileau's counsel introduced a preprinted form required to be completed by a health care provider in connection with a request for leave under the Family and Medical Leave Act.  The form was completed by a licensed social worker who treated Praileau for post-traumatic stress disorder resulting from Ibe's conduct.  The social worker also wrote a letter to UML requesting that Praileau be excused from attending a workshop in May 2018 due to her ongoing stress.  Ibe argues that both documents were inadmissible because they were not properly certified as medical records pursuant to G. L. c. 233, § 79G, and were not completed by an authorized physician.  There was no error.

First, neither document was described or introduced as a medical record and therefore we need not address the question

10

whether the requirements of G. L. c. 233, § 79G, were met. Second, the documents were relevant to the question whether Praileau suffered emotional distress. Thus, even had there been an objection, the judge did not abuse her discretion in admitting either document in evidence.

4. _Award of attorney's fees_. Ibe argues that the award of attorney's fees is excessive and claims that the judge abused her discretion by not properly calculating the reasonable amount of labor and time required in determining the amount of a reasonable fee. We review an award of attorney's fees for abuse of discretion. _Lydon_ v. _Coulter_, 85 Mass. App. Ct. 914, 914 (2014). Based on the record provided to us, we discern no abuse of discretion. The judge considered the hourly rate ($500) to be consistent with counsel's level of experience and expertise and similar to the hourly fee charged by other attorneys practicing in the same field. She also found the time spent to be reasonable. The judge was in the best position to determine the amount of time reasonably required in the circumstances and we do not substitute our judgment for that of the trial judge.

5. _Request for appellate attorney's fees_. Praileau requests an award of attorney's fees for work performed on her behalf during the appellate proceedings pursuant to G. L. c. 151B, § 9. As the prevailing party, she is entitled to such an award. Praileau may, within fourteen days of the issuance of

11

this decision, submit a detailed and supported petition in accordance with the procedures set forth in <u>Fabre</u> v. <u>Walton</u>, 441 Mass. 9, 10-11 (2004).

Ibe will have fourteen days thereafter to file a response.

<u>Judgment affirmed</u>.

By the Court (Vuono, Wolohojian[6] & Toone, JJ.[7]),

Assistant Clerk

Entered:  May 20, 2024.

---

[6] Justice Wolohojian participated in the deliberation on this case while an Associate Justice of this court, prior to her appointment as an Associate Justice of the Supreme Judicial Court.

[7] The panelists are listed in order of seniority.