CHARLOTTE FAIRFIELD *vs.* CITY OF SALEM.
SAME *vs.* SAME.

Essex.    November 8, 1912. — January 27, 1913.

Present: RUGG, C. J., BRALEY, SHELDON, & DECOURCY, JJ.

*Damages,* In tort: avoidable consequences. *Nuisance.*

Although the plaintiff in an action for damages resulting from a nuisance cannot recover for damages which he could have avoided by the exercise of reasonable precautions, he is not required to take unreasonable steps or to commit a wrongful act or trespass upon the property of another in order to avoid damage.

At the trial of an action by the owner of a wharf against a city for damages resulting from a discharge of sewage by the defendant into the dock adjoining the wharf, there was evidence tending to show that the plaintiff had attempted to get permission from the harbor and land commissioners under R. L. c. 96, § 25, to dredge the dock and that the permission for some time had been refused; that when he did get permission, the owner of a neighboring dock, which also would have had to be dredged in order for the plaintiff's dock to be dredged, refused his permission; and that the plaintiff had been given some assurance by the public officials that the defendant would attend to the dredging. The defendant asked the judge to instruct the jury that the measure of damages "is the dredging of the dock at such times as is necessary, plus the additional cost of doing business while the dock is being dredged." The request was refused. *Held,* that the request was refused properly, as it was not applicable to the evidence.

TWO ACTIONS OF TORT for damages resulting from the discharge by the defendant of sewage into a dock adjoining a wharf of the plaintiff, the first action being for damages arising during six years preceding June 2, 1908, and the second for those arising

between that date and January 10, 1910. Writs dated June 2, 1908, and January 10, 1910.

In each action the declaration contained two counts, the first for expenses caused by the filling up of the dock and the second for diminution in the value of the plaintiff's real estate because of the water being rendered unhealthy and offensive.

The cases were referred to James W. Sullivan, Esquire, as auditor. In the Superior Court they were tried together before *Fessenden*, J. The material facts are stated in the opinion. At the close of the evidence the defendant requested the judge to instruct the jury as follows: "If the jury find that the city of Salem through its negligence has filled up the so called Fairfield dock, then the duty of the plaintiff is to keep the damage as small as possible and the measure of damage in this case is the dredging of the dock at such times as is necessary, plus the additional cost of doing business while the dock is being dredged." The request was refused.

The jury found for the plaintiff in the first action in the sum of $4,147.99, and in the second action in the sum of $18,877.09; and the defendant alleged exceptions.

The cases were submitted on briefs.

*M. L. Sullivan & J. J. Ronan,* for the defendant.

*W. H. Niles & H. R. Mayo,* for the plaintiff.

DE COURCY, J. The instructions requested by the defendant invoked the rule of avoidable consequences, but they failed to recognize the limitations of that rule. Although the plaintiff could recover only for the direct consequences of the defendant's wrong, and not for damages that were avoidable by the use of reasonable precautions on her part, she was not called upon to take unreasonable steps to make the loss less aggravated, nor was she required to commit a wrongful act or to trespass upon the property of another in order to abate the nuisance.

The court could not rule as matter of law that the plaintiff's only plan to follow was that of dredging the dock from time to time, and that consequently the measure of her recovery was the cost of such dredging and the damage occasioned by the incidental interference with her coal business. The instructions requested assume that the plaintiff was free to dredge the dock at any time; but this work must be done within tide water, and

there was evidence that the harbor and land commissioners refused to give the necessary permit. R. L. c. 96, § 25. When she did get permission from the commissioners in 1909, it appears that a neighbor, Langmaid, objected to any trespass upon his dock by the dredging company, and that the work upon the plaintiff's premises would be ineffectual unless the Langmaid dock also was dredged. *White* v. *Chapin,* 102 Mass. 138. Even if she were free to do the work the jury might consider that she was warranted in relying upon the assurance of the public officials that the city would dredge the dock. And in determining what steps the plaintiff should have taken to reduce the damages it was necessary to consider other elements, such as the cost of doing the work of dredging, the number of times that it should be done in order to remove the filling that was being deposited continuously, and the extent of interruption of the plaintiff's business. Clearly these issues of fact were for the jury; and they were submitted with instructions that were clear and complete. *Brayton* v. *Fall River,* 113 Mass. 218.    *French* v. *Connecticut River Lumber Co.* 145 Mass. 261.

*Exceptions overruled.*