GRASSI DESIGN GROUP, INC., & another[1] *vs.* BANK OF
AMERICA, N.A.,[2] & another.[3]

No. 08-P-927.

Suffolk. March 11, 2009. - June 23, 2009.

Present: DUFFLY, KAFKER, & GRAINGER, JJ.

*Bank. Negotiable Instruments,* Forgery, Payment. *Uniform Commercial Code,* Bank, Payment on negotiable instrument. *Contract,* Performance and breach, Implied contract. *Consumer Protection Act,* Bank, Bad faith. *Practice, Civil,* Discovery, Failure to make discovery, Summary judgment.

In a civil action seeking damages arising from the defendant banks' honoring of forged checks, the judge properly entered summary judgment in favor of the banks on the plaintiffs' claims grounded in the Uniform Commercial Code (UCC), where the plaintiffs had failed to examine their monthly statements from the banks to discover the first forgery, and were thus precluded from recovering for the additional forged checks that were paid in good faith before the banks received notice from the plaintiffs, in that there was no genuine dispute that the banks' use of computer software to identify potentially fraudulent checks violated the banks' prescribed procedures for check handling or that the use of the software varied unreasonably from general banking usage [457-459]; further, the judge properly concluded that the plaintiffs' contract claims were substantially similar to their UCC claims, and likewise meritless [463-465], as were the plaintiffs' claims of violations of G. L. c. 93A and breach of an implied contract [465].

Although the judge's exclusion, in a civil action, of certain expert reports, as a sanction for discovery violations, was troubling in the circumstances of the case [459-461], the admission of the reports would not have been sufficient to create a genuine issue of material fact to defeat a motion for summary judgment [461-463].

CIVIL ACTION commenced in the Superior Court Department on May 2, 2005.

The case was heard by *Bruce R. Henry,* J., on motions for summary judgment.

---

[1] Beauchemin Grassi Interiors, Inc.

[2] As successor to Fleet National Bank.

[3] RBS Citizens, N.A., as successor to Citizens Bank of Massachusetts.

*Christopher J. Trombetta* for the plaintiffs.

*Stephen C. Reilly* for Bank of America, N.A.

*Jerrold Panich, Sr.,* for RBS Citizens, N.A.

GRAINGER, J. The plaintiffs, Grassi Design Group, Inc. (Grassi), and Beauchemin Grassi Interiors, Inc. (Beauchemin), are two interrelated businesses that maintained commercial checking accounts with the defendants, Bank of America, N.A. (Bank of America), and RBS Citizens, N.A. (Citizens).[4] After discovering that an employee common to both corporations had forged and cashed numerous checks that the defendants honored upon presentment, the plaintiffs sought damages. The plaintiffs appeal from the entry of summary judgment against them on all counts of the complaint.[5]

The factual and procedural background was set out below by the motion judge in a detailed and thoughtful memorandum of decision, and we need not repeat it here. We confine our summary of the findings to pertinent facts as they relate to the issues raised in this appeal.

The plaintiffs each filed claims seeking (1) reimbursement as provided by Article 4 of the Uniform Commercial Code, see G. L. c. 106, § 4-406,[6] (2) damages for breach of contract, (3) damages for breach of implied contract, and (4) damages for violation of G. L. c. 93A. They argue that summary judgment on all counts was improperly granted pursuant to both the Uniform Commercial Code and contract law. They also assert that the judge erred in excluding their expert witness's opinion report regarding the automatic processing of the forged checks. For the following reasons, we affirm the judgment.

1. *Reimbursement pursuant to Article 4 of the UCC.* The plaintiffs have conceded that they failed to examine the monthly statements sent to them by the defendant banks. General Laws c. 106, § 4-406, requires a bank customer promptly to examine

---

[4]Grassi maintained an account with defendant Bank of America; Beauchemin maintained an account with Citizens.

[5]The defendants filed counterclaims against the plaintiffs. A judgment pursuant to Mass.R.Civ.P. 54(b), 365 Mass. 821 (1974), was entered against the plaintiffs. This is the judgment on appeal.

[6]The text of Article 3 and Article 4 of the Uniform Commercial Code as contained in G. L. c. 106 was rewritten by St. 1998, c. 24, § 8. Our references are to the provisions of the articles as appearing in § 8.

monthly statements and to notify the bank of any unauthorized transactions, as the customer is in the best position to discover and report forgeries. If the customer fails to report the first forged check within thirty days, the customer is precluded from recovery for any additional checks forged by the same wrongdoer and paid in good faith before the bank has received notice from the customer. G. L. c. 106, § 4-406(*d*)(2).

The plaintiffs are thus subject to this preclusion unless they can invoke certain exceptions enumerated in G. L. c. 106, § 4-406(*e*). This section of the statute provides that if the plaintiffs can demonstrate that the banks did not exercise "ordinary care" in processing a forged check, liability is assigned proportionately to each party's responsibility for the loss.[7] Ordinary care, in turn, is defined by G. L. c. 106, § 3-103(*a*)(7), with reference to the "reasonable commercial standards, prevailing in the area in which the [bank] is located." Where a bank "takes an instrument for processing for collection or payment by automated means," § 3-103(*a*)(7) provides that "reasonable commercial standards do not require the bank to examine the instrument if the failure to examine does not violate the bank's prescribed procedures and the bank's procedures do not vary unreasonably from general banking usage not disapproved by this Article or Article 4."[8] *Ibid.*

The ordinary care exception is inapplicable here because the banks have demonstrated the absence of any genuine dispute on either exception, namely whether the failure to examine here

---

[7]The bank is liable for the entire loss if the plaintiffs can demonstrate that the bank did not pay an item in good faith. G. L. c. 106, § 4-406(*e*). The plaintiffs do not appeal from the judge's dismissal of the "good faith" aspects of the Article 4 claims.

[8]The plaintiffs argue that the automatic processing provisions in G. L. c. 106, § 3-103(*a*)(7) (which state that a bank need not examine an automatically processed instrument in order to exercise ordinary care), do not apply where a teller initially takes the check. We need not decide the issue because the plaintiffs have provided no evidence that the banks' failure to engage in visual examination of a check taken by a teller constituted a corresponding failure to observe "reasonable commercial standards, prevailing in the area in which [they were] located." *Ibid.* There is no admissible evidence in the record to suggest that the banks did not follow standards prevailing in the area or that such standards were unreasonable. Cf. *Govoni & Sons Constr. Co.* v. *Mechanics Bank,* 51 Mass. App. Ct. 35, 44-46 & n.21 (2001) (discussing phrase "reasonable commercial standard" under former version of statute).

"violate[d] the bank's prescribed procedures" or whether those procedures "vary unreasonably from general banking usage." *Ibid.* Specifically, both banks presented evidence that they used fraud detection computer software called ASI/16 to identify potentially fraudulent checks. The evidence tended to establish that the software "flagged," or outsorted, checks that failed to meet specified parameters of normal transaction activity, that the ASI/16 software process complied with the banks' policies and procedures for check handling, and that the ASI/16 software was the prevailing industry standard in the area where the banks were located during 2003 and 2004 — the time period during which the checks at issue were processed.

The only evidence that the plaintiffs, who bear the burden of proof on this issue, offer in support of their position are expert reports by Gene Cooney (Cooney reports) that they submitted in response to the defendants' motions for summary judgment.[9] The judge excluded these reports, relying on his discretion to impose sanctions on the plaintiffs for violations of discovery orders. See *Mattoon* v. *Pittsfield*, 56 Mass. App. Ct. 124, 131-132 (2002) (abuse of discretion standard applies when reviewing sanction order). We conclude that the exclusion of the reports was problematic under the circumstances presented by this record; however, as discussed *infra*, the reports provided the plaintiffs with no basis to avert the award of summary judgment to the defendants.

2. *The exclusion of the reports as a sanction for discovery violations.* The judge was well within his discretion in concluding that the plaintiffs should be penalized for discovery violations. See Mass.R.Civ.P. 37(d), 365 Mass. 800 (1974). The plaintiffs did not produce the Cooney reports or disclose Cooney as an expert until ten months after they first received expert interrogatories from the banks and not until they were required to file responses to the banks' motions for summary judgment, forty days after the close of discovery. See Mass.R.Civ.P. 26(e)(1), 365 Mass. 776 (1974) (requiring party "seasonably to supplement his

---

[9]Grassi filed a report, dated May 19, 2005, with respect to Bank of America (the May 19 report). Beauchemin filed a report, dated July 18, 2006, with respect to Citizens (the July 18 report), incorporating the first report and expressing additional opinions. We refer to them collectively as the Cooney reports.

response" with respect to "the identity of each person expected to be called as an expert witness at trial, the subject matter on which he is expected to testify, and the substance of his testimony"). The Cooney reports were impermissibly and inexcusably tardy,[10] and could have prejudiced the defendants, as they gave the plaintiffs an opportunity to fashion them in response to the defendants' summary judgment motions. It was thus permissible for the judge to impose a sanction.

Having chosen to impose a sanction it was incumbent upon the judge to fashion one that was appropriately punitive in relation to the objectionable behavior, and appropriately remedial in relation to the disadvantage visited on the defendants. Our case law is replete with appellate affirmation of trial judges who have excluded expert testimony where the expert was revealed shortly before trial. See *Kearns* v. *Ellis*, 18 Mass. App. Ct. 923, 924 (1984) (affirming exclusion of expert testimony where plaintiff gave name of expert two days before trial, after previously representing that there would be no expert); *Shaw* v. *Rodman Ford Truck Center, Inc.*, 19 Mass. App. Ct. 709, 713 (1985) (affirming exclusion of expert testimony where defendant ignored supplemental interrogatory requests for nine months and did not provide them until four days before trial); *Mattoon* v. *Pittsfield*, *supra* at 132-134 (affirming exclusion of expert testimony where plaintiff did not provide opportunity to depose expert and where plaintiff, ten days before trial, served answers to interrogatories opening new subject of testimony).

Here, however, we are confronted with misbehavior at an earlier stage of the litigation, a stage at which the delay is less egregious

---

[10]We are constrained to note, however, that the report with respect to Bank of America likely was not nearly so tardy as the judge assumed, in the sense that an apparent typographical error led the judge to conclude the report had been prepared a year in advance and held back in the face of repeated expert interrogatories and related discovery requests. On its first page the report is dated "May 19, 2005." However it refers repeatedly to events that occurred, and documents that were created, well after that date; for example, it cites the defendants' memorandum in support of summary judgment, filed in April of 2006, the deposition of Louis Marotta taken in February of 2006, the deposition of John Wild taken in January of 2006, and the Bank of America's answers to interrogatories filed in September of 2005. Cooney's affidavit, to which the report is attached, is dated "22nd day of May 2006." Finally, the almost identical Cooney report addressing codefendant Citizens is dated July 18, 2006, as is the covering affidavit.

and the prejudice more easily remedied. The judge could have remedied the prejudice by, for example, granting a continuance for the defendants to respond to the plaintiffs' late submissions and ordering compensation for extra costs incurred as a result. See *Morgan* v. *Jozus*, 67 Mass. App. Ct. 17, 24 (2006) ("While a judge, in the exercise of discretion, may exclude expert testimony for failure to comply with discovery, the judge must consider other options, including a sua sponte continuance of the [case]"). At the same time, we note that our system favors the substantive resolution of disputes on the merits in most instances. See *Monahan* v. *Washburn*, 400 Mass. 126, 129 (1987) ("The law strongly favors a trial on the merits of a claim"). The exclusion of the plaintiffs' sole proffer of evidence in opposition to the motion for summary judgment was tantamount to the dismissal of their complaint, a sanction reserved for egregious circumstances. See *id.* at 128 ("Involuntary dismissal is a drastic sanction which should be utilized only in extreme situations"). Cf. *Atlas Tack Corp.* v. *Donabed*, 47 Mass. App. Ct. 221, 224 (1999) (affirming exclusion of impermissibly vague portion of answer to expert witness interrogatory that ultimately resulted in dismissal on summary judgments). Accordingly, under the circumstances of this case, we are troubled by the application of a penalty which was, in all material respects, extreme in that it foreclosed the plaintiffs' ability to seek legal redress.

We affirm the result here however because we conclude that the Cooney reports, even had they been admitted, were insufficient to oppose summary judgment.

3. *Entry of summary judgment.* The Cooney reports are included in the record before us and the defendants have argued on appeal that the reports do not avail the plaintiffs. "Because the record compiled for summary judgment is open to our independent consideration, we have made an independent compilation of the relevant facts to frame the ultimate legal question whether summary judgment is appropriate." *Matthews* v. *Ocean Spray Cranberries, Inc.*, 426 Mass. 122, 123 n.1 (1997). We agree with the defendants.

Many of the assertions in the Cooney reports fail to comply with Mass.R.Civ.P. 56(e), 365 Mass. 825 (1974). Both reports contain legal conclusions and extensive legal argument, specula-

tion based on assumptions conceded to be unverified, irrelevant digressions questioning the defendants' compliance with deposition subpoenae issued pursuant to Mass.R.Civ.P. 30(b)(6), 365 Mass. 782 (1974), and irrelevant assertions concerning the defendants' ability, or lack thereof, to compare presented instruments with signature cards if they wished to do so.[11]

While the defendant banks proffered specific evidence pertaining to the "reasonable commercial standards, prevailing in the area" in which the bank is located, see G. L. c. 106, § 3-103(*a*)(7), the May 19, 2006, Cooney report concludes, with no stated elaboration, that "[a]utomated fraud detection systems were not the standard in the banking industry during 2003 and 2004," with no reference to any particular market.[12] In sum, the Cooney reports, on the whole, do not qualify as expert opinions under the standards set forth in *Commonwealth* v. *Lanigan*, 419 Mass. 15, 25-26 (1994), and, even where admissible, are insufficient to create a genuine issue of material fact as they do not relate to the "general banking usage" in the area, as required by G. L. c. 106, § 4-103. We must uphold summary judgment where the defendants demonstrate that the plaintiffs are unable to offer admissible

[11]Specifically, legal conclusions and extensive legal argument are contained in paragraphs 1, 2, and 6 of the July 18 report and paragraphs 4 and 5 of the May 19 report. Speculation based on assumptions conceded to be unverified is found in paragraphs 2, 3, 4, and 5 of the July 18 report and paragraphs 1.b, 2.a.1, and 2.b of the May 19 report. Irrelevancy relating to the defendants' compliance with deposition subpoenae issued pursuant to Mass.R.Civ.P. 30(b)(6) is found in paragraph 4 of the July 18 report. Speculation concerning the defendants' ability, or lack thereof, to compare presented instruments with signature cards if they wished to do so is the gist of paragraph 2 of the July 18 report and paragraph 3 of the May 19 report.

[12]In this context the May 19 Cooney report purported to analyze statistics apparently found on an Internet Web site, not of the system used by the banks (the ASI/16 system) but posted by a successor system. By dividing the "more than 200 financial institutions worldwide" that the successor system claimed as customers by the assumed number of 18,300 commercial banks nationwide, the report concluded that 1.1 percent of banks nationwide use the system. This purported nationwide calculation, in addition to being based on inadmissible hearsay from a Web site of one particular automated system, is not relevant to whether the banks' procedures "vary unreasonably from general banking usage," G. L. c. 106, § 3-103(*a*)(7), which, as stated above, the Legislature has construed "to mean a general usage common to banks in the area concerned . . . [a] usage followed generally throughout a state, a substantial portion of a state, a metropolitan area or the like would certainly be sufficient." G. L. c. 106, § 4-103 comment 4.

evidence to support an essential element of their claim. See *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 716 (1991). Because the plaintiffs are unable to prove an essential element of their claim, summary judgment was appropriate.

4. *Contract claims.* The plaintiffs next argue that the judge improperly granted summary judgment to the defendants on the contract claims. However, as the motion judge properly concluded, the contract provisions cited by the plaintiffs are substantially similar to those in G. L. c. 106, § 4-406, and must likewise fail.

The Bank of America agreement with Grassi, reproduced in relevant part in the margin,[13] provides that the customer will be precluded from asserting claims for unauthorized items, unless it reports them to Bank of America "within [thirty] days after we make the statement available to you." This provision is similar to G. L. c. 106, § 4-406(*d*), which also precludes the customer from recovery for unauthorized items if the customer does not "promptly notify" the bank.[14] In any event, Grassi points to no items that were reported within thirty days of appearing on a statement.

The Citizens agreement with Beauchemin, also reproduced in relevant part in the margin,[15] similarly provides that the customer must bear or share the loss for unauthorized items that are not

---

[13]"You agree that you will look over your statements, checks and other materials sent with your statement as soon as you get them. You agree to look for . . . unauthorized signatures . . . . If you find [one] you agree to notify us within thirty . . . days after we send you the statement. You agree that if you fail to notify us of an unauthorized [signature] within [thirty] days after we make the statement available to you, you will be responsible for the unauthorized . . . item . . . and precluded from asserting it against us."

[14]The customer is also precluded from asserting against the bank "the customer's unauthorized signature or alteration by the same wrongdoer on any other item paid in good faith by the bank if the payment was made before the bank received notice from the customer of the unauthorized signature or alteration and after the customer had been afforded a reasonable period of time, not exceeding [thirty] days, in which to examine the item or statement of account and notify the bank." G. L. c. 106, § 4-406(*d*)(2).

[15]"STATEMENTS — You must examine your statement of account with 'reasonable promptness.' If you discover (or reasonably should have discovered) any unauthorized signatures or alterations, you must promptly notify us of the relevant facts. As between you and us, if you fail to do either of these duties, you will have to either share the loss with us, or bear the loss entirely yourself (depending on whether we used ordinary care and, if not, whether we

reported by the customer within thirty days of the statement's becoming available, depending on whether the bank used ordinary care or contributed to the loss. In the third paragraph, the bank disclaims any liability whatsoever, regardless whether it used ordinary care, for claims made sixty days after the statement is made available. Thus, for claims made within thirty days of the statement, the customer may recover without any additional showing. For claims made between thirty and sixty days, the customer may recover only if the bank failed to exercise ordinary care and substantially contributed to the loss. And for claims made more than sixty days after the statement became available, the customer may not recover, regardless whether the bank exercised ordinary care. Beauchemin points to no items that were reported within thirty days of the statements' becoming available.

As to the items reported between thirty and sixty days of the statements becoming available, Beauchemin was required to show both that Citizens failed to exercise ordinary care and that the failure substantially contributed to the loss, just as Beauchemin was required to show pursuant to § 4-406. See G. L. c. 106, § 4-406(*e*). Beauchemin, as discussed above, has failed to make such a showing. Finally, as to items reported sixty days after appearing on a statement, the bank's contract does not avail Beauchemin, inasmuch as Beauchemin did not qualify under the analogous section of the Uniform Commercial Code, which gives more protection than the contract. See G. L. c. 106, § 4-406(*f*) ("Without regard to care or lack of care . . . a customer who does not within one year after the statement or items are made

substantially contributed to the loss). The loss could be not only with respect to items on the statement but other items with unauthorized signatures or alterations by the same wrongdoer.

"You agree that the time you have to examine your statement and report to us will depend on the circumstances, but will not, in any circumstance, exceed a total of [thirty] days from when the statement is first sent or made available to you.

"You further agree that if you fail to report any unauthorized signatures, alterations, forgeries, or any other errors in your account within [sixty] days of when we first send or make the statement available, you cannot assert a claim against us on any items in that statement, and as between you and us the loss will be entirely yours. This [sixty]-day limitation is without regard to whether we used ordinary care. The limitation in this paragraph is in addition to that contained in the first paragraph of this section."

available to the customer . . . discover and report [the unauthorized item] is precluded from asserting [a claim] against the bank").

Because the contract claims fail, we need not address the judge's determination that those claims are supplanted by the Uniform Commercial Code. See *Jensen* v. *Essexbank*, 396 Mass. 65, 66-67 (1985); *Arkwright Mut. Ins. Co.* v. *State Street Bank & Trust Co.*, 428 Mass. 600, 606 (1998).

5. *Remaining claims.* Inasmuch as no genuine dispute exists with respect to the banks' good faith or exercise of ordinary care, summary judgment was appropriately entered against the plaintiffs on their assertion of a violation of G. L. c. 93A.

The plaintiffs also asserted a claim for breach of an implied contract, arguing that the defendants committed a breach of an implied contract that they created by requiring the plaintiffs to sign a signature card. The plaintiffs make no argument on appeal that the judge erred when he determined these claims were supplanted by the Uniform Commercial Code. Nor do they make any argument that, if the claims were not supplanted, a dispute existed as to any material fact. Because the issue is not argued, we need not address it. See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975).

*Judgment affirmed.*