812                          76 Mass. App. Ct. 812 (2010)

Global Investors Agent Corporation v. National Fire Insurance Company of Hartford.

GLOBAL INVESTORS AGENT CORPORATION & others[1] vs.
NATIONAL FIRE INSURANCE COMPANY OF HARTFORD
& others.[2]

No. 09-P-762.

Middlesex. February 8, 2010. - May 28, 2010.

Present: KANTROWITZ, GREEN, & MEADE, JJ.

*Attorney at Law,* Attorney-client relationship, Compensation. *Privileged Communication. Evidence,* Privileged communication, Settlement offer, Relevancy and materiality, Expert opinion. *Waiver. Practice, Civil,* Severance of claims, Instructions to jury, Attorney's fees, Costs, Directed verdict, Amendment. *Negligence. Damages,* Mitigation. *Contract,* Unjust enrichment, Performance and breach. *Insurance,* Insurer's obligation to defend.

In a civil action arising from the defendant insurers' failure to defend the plaintiffs against counterclaims resulting from an action initiated by the plaintiffs in Federal District Court, the judge did not err in allowing limited discovery of, and admitting in evidence, certain communications covered by the attorney-client privilege, where the plaintiffs had waived their privilege with respect to that evidence when they placed advice they received from their attorney in the Federal litigation at issue in the present litigation by asserting a claim for consequential damages that relied on the relative merits and value of their Federal case, for which their legal counsel in that matter was the only source of evidence. [816-820]

A trial court judge permissibly, in the exercise of her discretion, awarded sanctions against a party pursuant to Mass.R.Civ.P. 37(b)(2), based on the party's continuing refusal to comply with an order compelling discovery of certain communications with counsel. [820]

In a civil action arising from the defendant insurers' failure to defend the plaintiffs, the judge did not err in denying the plaintiffs' motion to bifurcate their breach of contract claims and their G. L. c. 93A and G. L. c. 176D claims, and in taking from the jury an advisory opinion as to the validity of the statutory claims [820-821]; further, at trial, the judge did not abuse her discretion in allowing evidence of settlement offers made prior to the filing of the statutory claims [821-822].

There was no merit to a claim by the plaintiffs in a civil action that the trial judge allowed in evidence deposition testimony that included inadmissible

[1]Gold Management, LLC; Richard L. Gold; and Thomas R. Gold.

[2]Transportation Insurance Company and CNA Financial Corporation, collectively doing business as CNA.

legal conclusions [822-823]; further, the judge acted well within her discretion in excluding the testimony of the plaintiff's expert as a penalty for the plaintiffs' discovery violations [823].

In a civil action arising from the defendant insurers' failure to defend the plaintiffs, the judge correctly set forth the applicable law in the jury instructions as it related to the reasonableness of the plaintiffs' attorney's fees [823-825], and error, if any, in the instructions on the standard of gross negligence did not so prejudice the plaintiffs as to require reversal [825]; further, there was no error in the instructions on the plaintiffs' duty to mitigate damages [825-826], and the judge properly declined the plaintiffs' request for an unjust enrichment instruction [826].

In a civil action arising from the defendant insurers' failure to defend the plaintiffs, the judge justifiably allowed two defendants to amend their answer to deny the claims against them after the plaintiffs failed to produce any evidence showing a contractual relationship between themselves and the two defendants; consequently, a directed verdict in favor of both defendants was proper. [826-827]

In a civil action arising from the defendant insurers' failure to defend the plaintiffs, the judge properly limited the plaintiffs' award of attorney's fees and costs to those incurred during the time period necessary to establish the defendants' duty to defend [828-829]; further, there was no error in the judge's reduction of the award after taking into account the elements to be considered in determining the reasonableness of attorney's fees [829].

CIVIL ACTION commenced in the Superior Court Department on July 30, 2003.

Motions for summary judgment were heard by *Raymond J. Brassard*, J.; an emergency order for a protective order was heard by *Bonnie H. MacLeod-Mancuso,* J.; and the case was tried before *Linda E. Giles*, J., and motions for a new trial and for amendment of the judgment were heard by her.

*Ira H. Zaleznik* for the plaintiffs.

*Mark W. Shaughnessy* for the defendants.

KANTROWITZ, J. This case stems from a dispute concerning the defendant insurers' duty to defend the plaintiffs against counterclaims resulting from an underlying action initiated by the plaintiffs in the U.S. District Court for the District of Maine (Maine litigation). The Maine litigation settled in mediation prior to the defendants' providing coverage,[3] and the plaintiffs brought suit against the defendants in Massachusetts, alleging

---

[3]Under the terms of the settlement in the Maine litigation, the plaintiffs recovered the amount of their initial investment in the Maine company, Global Protein Products, plus interest on that amount at a rate of ten percent.

breach of contract and breach of the covenant of good faith and fair dealing for failing to defend them in the Maine litigation.

Specifically, the plaintiffs claimed $96,850.01 in damages related to legal fees and costs stemming from the defendants' failure to defend them in the Maine litigation, as well as consequential damages related to their loss of valuable claims and rights. They also alleged that the defendants committed unfair and deceptive practices in violation of G. L. c. 93A and G. L. c. 176D.

Prior to trial, on September 7, 2004, a Superior Court judge granted the plaintiffs partial summary judgment, establishing the defendants' breach of their duty to defend the plaintiffs in the Maine litigation, and leaving only the issue of damages to be determined. The judge denied the plaintiffs' motion to bifurcate the trial, and all claims were presented to the jury, which awarded the plaintiffs $38,000 (of the requested $96,850.01). The jury declined to award either consequential or, in an advisory opinion, c. 93A and c. 176D damages. The judge also allowed the motions for a directed verdict, filed by codefendants Transportation Insurance Company (Transportation Insurance) and CNA Financial Corporation (CNA Financial), collectively doing business as CNA, finding that no evidence supported any of the claims against them.

Posttrial, pursuant to Mass.R.Civ.P. 59(e), 365 Mass. 828 (1974), the plaintiffs filed a motion to alter or amend the judgment, arguing that, under *Preferred Mut. Ins. Co.* v. *Gamache*, 426 Mass. 93 (1997), and its progeny, they were "entitled to the reasonable attorney's fees and expenses incurred in successfully establishing the insurer's duty to defend under the policy." *Id.* at 98. The judge agreed and awarded the plaintiffs additional attorney's fees in the amount of $22,420, and costs in the amount of $313.18, for successfully establishing the defendants' duty to defend. In all, the plaintiffs were awarded $84,783.33.

Finding the damages insufficient, the plaintiffs appeal, arguing that the judge made several erroneous determinations, to wit, impermissibly (1) allowing evidence covered by the attorney-client privilege; (2) refusing to bifurcate the trial; (3) admitting settlement offers; (4) admitting inadmissible deposition testimony; (5) excluding expert testimony; (6) providing improper jury instructions; (7) directing a verdict for Transportation Insur-

76 Mass. App. Ct. 812 (2010)                               815

Global Investors Agent Corporation v. National Fire Insurance Company of Hartford.

ance and CNA Financial; and (8) calculating their award of attorney's fees for establishing the defendants' duty to defend. We affirm.

*Background.* In 2000, plaintiffs Richard L. Gold and Thomas R. Gold (the Golds) formed the companies Global Investors Agent Corporation and Gold Management, LLC, and entered into an investment agreement and a management services agreement with a Maine company, Global Protein Products (GPP). Contemporaneously, the Golds entered into a commercial general liability coverage policy issued by the defendants covering themselves individually as well as Global Investors Agent Corporation and Gold Management, LLC.[4]

On November 26, 2001, the GPP board of directors voted to terminate the management services agreement with the plaintiffs "for cause" due to "gross negligence in performing [their] duties under this agreement." On January 10, 2002, the plaintiffs brought suit in the United States District Court for the District of Maine against GPP, and GPP filed counterclaims against the plaintiffs in April of 2002. On May 2, 2002, the plaintiffs timely notified the defendant insurers about the counterclaims and sought defense coverage under their insurance policy. Prior to the defendants' determination whether the defense was covered under the plaintiffs' policy, on July 30, 2002, the plaintiffs settled the Maine litigation.

Thereafter, on July 30, 2003, the plaintiffs sued the defendants in Massachusetts for failing to defend them in the Maine litigation. In addition to their claim for attorney's fees expended to defend themselves, the plaintiffs also sought to recover consequential damages on the theory that they were forced to settle the case on unfavorable terms and abandon valuable claims and rights, and sought c. 93A and c. 176D damages on the basis that the defendants used unfair and deceptive practices in failing promptly to defend them. After summary judgment

---

[4]At trial, Michael Brown, an employee of Continental Casualty Company designated by defendant CNA to speak on its behalf, testified that National Fire Insurance Company, Transportation Insurance, and CNA Financial, as well as Continental Casualty Company and others, operate under the umbrella trade name "CNA." Brown explained that the plaintiffs' policy was issued solely by defendant National Fire Insurance Company, not codefendants Transportation Insurance or CNA Financial.

established the defendants' duty to defend, the plaintiffs were unsuccessful at trial in establishing consequential and c. 93 and c. 176D damages.

The main issue on appeal is whether the attorney-client privilege was held to be appropriately waived. We address the other issues in turn.

*Waiver of attorney-client privilege.* The trial judge allowed limited discovery on the plaintiffs' attorney-client communications because she determined that the plaintiffs waived their privilege when they placed advice they received from their attorney "at issue" in the present litigation. Specifically, the judge permitted the defendants to depose the plaintiffs' attorney in the Maine litigation, Harold Friedman, concerning his perceptions, recollection, and analysis of the plaintiffs' defenses and strategies before, during, and after the mediation of the Maine litigation.

"The classic formulation of the attorney-client privilege, which we indorse, is found in 8 J. Wigmore, Evidence § 2292 (McNaughton rev. ed. 1961): '(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.' " *Commissioner of Rev.* v. *Comcast Corp.*, 453 Mass. 293, 303 (2009). See Mass. G. Evid. § 502 (2010). "[W]e construe the privilege narrowly, in part to protect the competing societal interest of the full disclosure of relevant evidence." *Commissioner of Rev.* v. *Comcast Corp., supra* at 304. "[A] party may resist discovery on the basis of privilege, but may not at the same time rely on the privileged communications or information as evidence at trial." *G.S. Enterprises, Inc.* v. *Falmouth Marine, Inc.*, 410 Mass. 262, 270-271 (1991).

"There are, under Massachusetts law, certain exceptions to the attorney-client privilege and some circumstances in which the privilege may be deemed waived other than by express waiver." *Darius* v. *Boston*, 433 Mass. 274, 277 (2001). "We accept the premise underlying the concept of 'at issue' waiver of the attorney-client privilege: there are circumstances in which a litigant may implicitly waive the privilege, at least in part, by

injecting certain types of claims or defenses into a case." *Id.* at 284. See Mass. G. Evid. § 523(b)(2). See also *Zabin* v. *Picciotto*, 73 Mass. App. Ct. 141, 158 (2008) ("The nature of the defendants' allegations placed the work [the attorney] performed in the underlying litigation directly at issue, and [the attorney] was the only source available to testify regarding the work she performed").

In *Darius*, the Supreme Judicial Court held that while it was not formulating "an exact definition of the 'at issue' waiver doctrine under Massachusetts law," the discovery sought by the defendants in the case fell "well beyond whatever definition we might adopt." *Darius* v. *Boston, supra* at 279. In doing so, the court noted that, since the case involved a statute of limitations issue related to the timing of certain attorney-client communications, "[t]his is not a case . . . where a party relies on 'advice of counsel' in its claim or defense. It is thus distinguishable from cases . . . in which the advice of counsel, at the time a party took certain action, is directly or indirectly implicated in the party's claim or defense." *Id.* at 280 n.7, citing, among other cases, *Hearn* v. *Rhay*, 68 F.R.D. 574 (E.D. Wash. 1975), as illustrative of a case where an "advice of counsel" claim or defense existed.[5]

In further resolving the applicability of a potential "at issue" waiver in *Darius*, the court placed two additional limitations on the doctrine. First, "[a]n 'at issue' waiver, in circumstances where it is recognized, should not be tantamount to a blanket waiver of the entire attorney-client privilege in the case. By definition, it is a limited waiver of the privilege with respect to what has been put 'at issue.' " *Darius* v. *Boston, supra* at 283. Second, "there can be no 'at issue' waiver unless it is shown

---

[5]The court noted that "[m]ost courts have adopted some variation of the formulation that appears in *Hearn* v. *Rhay*, 68 F.R.D. 574 (E.D. Wash. 1975) . . . that an implicit waiver should be found when three conditions exist: '(1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense.' " *Darius* v. *Boston*, 433 Mass. at 278, quoting from *Hearn* v. *Rhay, supra* at 581. The court also noted that this formulation and its application have been criticized and declined a wholesale adoption of the formulation. *Id.* at 278-279.

that the privileged information sought to be discovered is not available from any other source." *Id.* at 284.

With these limitations in mind, we address whether an "at issue" waiver occurred in the case at bar. Where our review concerns the attorney-client privilege, "[m]ixed questions of law and fact, such as whether there has been a waiver, generally receive de novo review." *Commissioner of Rev.* v. *Comcast Corp.*, 453 Mass. at 303.

Here, the plaintiffs made the following assertion in their complaint: "Convinced that they would be financially unable to defend the Claims themselves, and without any indication from defendants that defendants would provide the defense and coverage provided for in the insurance contracts, *plaintiffs were forced to settle the underlying litigation on highly unfavorable terms, including forgoing their own very valuable claims against the claimants* — claims that were worth many hundreds of thousands of dollars" (emphasis added).

Plaintiff Richard L. Gold responded to the defendants' interrogatory requesting details concerning the occurrences giving rise to the claim by stating that "[a]s a direct and proximate result of the defendants['] failure to defend and provide coverage, or to notify plaintiffs of their decision on defense or coverage, *plaintiffs were forced to settle the underlying litigation on disadvantageous terms, even though the claims in the underlying litigation were without merit*" (emphasis added).

In response to the defendants' interrogatory requesting disclosure of "all facts that led to the settlement of the [Maine] lawsuit," the plaintiffs stated: "In the course of the mediation, the defendants in the Maine action threatened the Plaintiffs that the cost of . . . defending against their counterclaims would exceed three hundred thousand dollar [*sic*]. . . . The likely amount of litigation costs was confirmed by Plaintiffs' own counsel in the Maine litigation. *Although Plaintiffs felt that the counterclaims were without merit, and that Plaintiffs would ultimately prevail at trial, in light of the likely costs of defense, Plaintiffs decided to settle, even though Plaintiffs felt that the terms of settlement were inadequate and unfair*" (emphasis added).

Here, the plaintiffs effected an "at issue" waiver of attorney-client privilege because "the advice of counsel, at the time

[they] took certain action, [wa]s directly or indirectly implicated in [their] claim." *Darius* v. *Boston*, 433 Mass. at 280 n.7. At its essence, their claim for consequential damages relies on the relative merits and value of their case in the Maine litigation, and the only source of that information was attorney Friedman. Without access to Friedman's perceptions, recollection, and analysis of the plaintiffs' defenses and strategies, the defendants would have been unable to formulate their defenses accordingly.

As noted by the judge below, "[t]he plaintiffs have resisted discovery on the basis of privilege, but relied on the privileged communications or information to support their allegations." A single justice of this court agreed, stating that "the record amply supports the judge's conclusion that the plaintiffs have placed their communications with their attorney regarding the Maine litigation directly at issue in this case. Therefore, the judge correctly determined that the attorney/client privilege has been waived." Because the plaintiffs' case depends on an assessment of their position in the Maine litigation, they placed their otherwise privileged communications "at issue."

Moving to the additional restrictions pertaining to an "at issue" waiver, the waiver here was appropriately limited "with respect to what has been put 'at issue.' " *Darius* v. *Boston*, *supra* at 283. The judge's order compelling deposition testimony of attorney Friedman set forth specific parameters limiting discovery to matters related to his representation of the plaintiffs in the Maine litigation. The order applied only to information that the plaintiffs, through their complaint and answers to interrogatories, placed squarely at issue in the case. Access to information from Friedman also allowed the defendants to counter the plaintiffs' expert, George Marcus, who had access to such information and presented the plaintiffs' view on the strength of their claims at trial.

Additionally, it was sufficiently "shown that the privileged information sought to be discovered is not available from any other source." *Id.* at 284. Since only Friedman was in a position to explain the relative strengths and weaknesses of the plaintiffs' position in the Maine litigation and, more particularly, the assessments he gave and upon which the plaintiffs claimed to have relied upon in deciding to settle, no other source could have provided such information. As no other source could have

provided the defendants with adequate information and the matter was placed "at issue" in the claims of the plaintiffs, the privilege was waived, and the order compelling discovery was proper.[6]

The plaintiffs further assert that the judge erred by assessing sanctions in the amount of $2,126 in attorney's fees against them for failing to comply with discovery orders pertaining to their communications with counsel. Following the June 8, 2006, order compelling the deposition of Friedman, the plaintiffs filed a motion for reconsideration, which was denied, and a petition for an interlocutory appeal, pursuant to G. L. c. 231, § 118. During this period of several months, the plaintiffs did not allow discovery as per the original order.

On this matter, the language of § 118 is clear: "The filing of a petition hereunder *shall not suspend* the execution of the order which is the subject of the petition, except as otherwise ordered by a single justice of the appellate court" (emphasis added). G. L. c. 231, § 118, as amended by St. 1977, c. 405. See *Demoulas Super Mkts., Inc.* v. *Peter's Mkt. Basket, Inc.,* 5 Mass. App. Ct. 750, 753 & n.4 (1977). The single justice here did not suspend the execution of the order; ultimately, she denied the appeal, concluding that "the judge had a sound basis for her ruling." Thus, the trial judge permissibly, in the exercise of her discretion, awarded sanctions pursuant to Mass.R.Civ.P. 37(b)(2), as amended, 390 Mass. 1208 (1984), based on the plaintiffs' refusal to comply with the order compelling discovery.

*Bifurcation.* The plaintiffs next challenge the judge's denial of their motion to bifurcate the breach of contract and G. L. c. 93A and c. 176D claims.

A motion to bifurcate a civil trial rests solely within the discretion of the trial judge. *Dobos* v. *Driscoll,* 404 Mass. 634, 644-645, cert. denied sub nom. *Kehoe* v. *Dobos,* 493 U.S. 850

---

[6]There is no merit to the plaintiffs' argument that, since the defendants were allowed discovery of their communications with Friedman, unlimited disclosure should have been required of the defendants' communications with counsel as well. Contrary to the plaintiffs' assertion, the defendants did not waive the attorney-client privilege because they did not rely on an "advice of counsel" defense when they asserted privilege in their answers to interrogatories. To allow such access as requested by the plaintiffs "would pry open the attorney-client relationship and strike at the very core of the privilege." *Darius* v. *Boston, supra* at 280.

(1989). As we have previously noted, in cases where "the under-lying facts and the witnesses are substantially the same," the "bifurcation of common law claim and c. 93A claim has little to commend it." *Wyler* v. *Bonnell Motors, Inc.*, 35 Mass. App. Ct. 563, 566 (1993). "It is not only possible, but it is the norm as well as the preferred practice for a judge to try common law and c. 93A questions simultaneously. In that setting the judge has the choice of: (1) allowing the jury to decide the 93A question as well; (2) taking from the jury a nonbinding advisory opinion of the 93A question; or (3) deciding the 93A question independently." *Ibid.*

Here, the judge chose the second option, taking an advisory opinion from the jury as to the validity of the plaintiffs' c. 93A and c. 176D claims, with which she ultimately concurred. While we may have acted differently, there was no abuse of discretion in the decision to try the claims together.

*Settlement offers.* At trial, the plaintiffs objected to the admission of testimony of the defendants' claim representative, Michael Brown, regarding settlement offers made by the defendants concerning the plaintiffs' claim.

"We do not disturb a judge's decision to admit evidence absent an abuse of discretion or other legal error." *Zucco* v. *Kane*, 439 Mass. 503, 507 (2003). Generally, evidence of settlement offers or offers to compromise is "inadmissible to prove or disprove a defendant's liability." *Id.* at 509. See Mass. G. Evid. § 408. "This evidentiary rule is designed to encourage settlements by limiting the collateral consequences of a decision to compromise." *Zucco* v. *Kane, supra* at 509. However, on c. 93A and c. 176D claims, evidence of settlement offers made prior to suit are relevant in determining damages. See Gilleran, The Law of Chapter 93A § 11.10 (2d ed. 2007) ("Under both § 9 and § 11 a defendant may prevent any award of multiple damages . . . by tendering a reasonable written offer of settlement . . . [and] [t]he defendant has the burden of proving the reasonableness of the settlement tendered").

Here, as the jury was called upon to render an advisory opinion on the c. 93A and c. 176D claims, it was entitled to hear about the defendants' presuit attempts at settlement. The judge reasoned that since the plaintiffs included c. 93A and c. 176D claims in

their complaint, the defendants' "reaction and responses to the plaintiffs' demand [are] totally germane." The judge further clarified that such testimony would be limited to settlement offers made prior to start of litigation, stating, "What happens before the 93A claim is fair game. . . . What comes after is off limits as a settlement offer."[7] As there was no abuse of discretion in refusing to bifurcate the trial, there was no abuse in allowing evidence of the settlement offers made prior to the filing of the c. 93A and c. 176D claims.

*Deposition testimony.* The plaintiffs claim that the judge erred in allowing deposition testimony to be used at trial because the testimony included inadmissible legal conclusions. The depositions of Carl Sangree, a member of the board of directors of GPP, and Mark Kierstead, the founder and chief executive officer of GPP, were read in evidence because both men were unavailable at trial. As principals in the prior case, which settled, they testified to various aspects of the settlement proceedings. Their testimony did not render testimony on the ultimate issue to be decided in the case at bar, to wit, whether the defendants breached the insurance contract, causing the plaintiffs to incur legal fees and suffer consequential damages, and whether, in doing so, the defendants violated c. 93A and c. 176D. Rather, both testified regarding the actions of the plaintiffs prior to the termination of the management services agreement. Any opinions provided were used, among other reasons, to counter testimony by the plaintiffs' expert, George Marcus, who provided his assessment of the strength of the plaintiffs' case in the Maine litigation. As the opinions of Sangree and Kierstead did not draw legal conclusions regarding the questions within the purview of the jury in this case, it was within the discretion of the trial judge to allow their testimony. See *DeJesus* v. *Yogel,* 404 Mass. 44, 47 (1989) ("relevant evidence should be admitted unless there is a quite satisfactory reason for excluding it" . . . [and] "cases have recognized a range of discretion in the

---

[7]In fact, it was plaintiffs' counsel who questioned Brown on redirect examination concerning the postsuit settlement offer. When defense counsel brought this to the judge's attention, she offered to strike Brown's testimony on the postsuit settlement offer, but plaintiffs' counsel declined the offer. Following the bench conference, plaintiffs' counsel continued to question Brown about the presuit settlement offer, including the amount of the initial offer, $25,000.

judge") (citation and internal quotation marks omitted); Mass. G. Evid. §§ 401-403.

*Exclusion of expert testimony.* The plaintiffs argue that the judge erred in excluding the testimony of their expert, Paul Amoruso, despite the fact that they failed to disclose Amoruso as an expert until just prior to trial.

A party is required " 'seasonably to supplement his response' with respect to 'the identity of each person expected to be called as an expert witness at trial, the subject matter on which he is expected to testify, and the substance of his testimony.' " *Grassi Design Group, Inc.* v. *Bank of America, N.A.*, 74 Mass. App. Ct. 456, 459-460 (2009), quoting from Mass.R.Civ.P. 26(e)(1), 365 Mass. 776 (1974). "Our case law is replete with appellate affirmation of trial judges who have excluded expert testimony where the expert was revealed shortly before trial." *Id.* at 460.

Here, following an October, 2005, order compelling the plaintiffs to answer expert interrogatories, the defendants deposed the plaintiffs' two disclosed experts in March and April, 2006. In June, 2007, the trial was scheduled for October 27, 2007, and the judge ordered the parties to file pretrial motions on or before October 3, 2007.

Instead of supplementing their expert interrogatories regarding Amoruso, the plaintiffs attached Amoruso's affidavit addressing the c. 93A and c. 176D damages to a late-filed summary judgment motion, which was denied as untimely. The plaintiffs argued that the filing of the affidavit was sufficient to allow them to call Amoruso at trial. The judge disagreed, noting that the plaintiffs "didn't even go through the formality of supplementing [their] expert interrogatories," and stating that "it is so late, four years after the initiation of this litigation," to introduce a new expert "to support a claim that you brought as your number one count." The judge concluded that "to spring Mr. Amoruso on them no longer ago than August, which was two months ago, for a trial that's about to begin tomorrow, October 26th, is much, much too late."

"The judge was well within [her] discretion in concluding that the plaintiffs should be penalized for discovery violations." *Grassi Design Group, Inc.* v. *Bank of America, N.A., supra* at 459.

*Jury instructions.* The plaintiffs argue that the judge incor-

rectly set forth the applicable law in the jury instructions as it related to the reasonableness of their attorney's fees, the standard of gross negligence, and their duty to mitigate damages. They also claim that the judge improperly denied their request for an unjust enrichment instruction. The plaintiffs objected to all of the instructions in question.

"When reviewing jury instructions to which there has been an objection, we conduct a two-part test: 'whether the instructions were legally erroneous, and (if so) whether that error was prejudicial.' " *Kelly* v. *Foxboro Realty Assocs., LLC*, 454 Mass. 306, 310 (2009), quoting from *Masingill* v. *EMC Corp.*, 449 Mass. 532, 540 n.20 (2007). See *Blackstone* v. *Cashman*, 448 Mass. 255, 270 (2007) ("An error in jury instructions is not grounds for setting aside a verdict unless the error was prejudicial — that is, unless the result might have differed absent the error. See Mass. R. Civ. P. 61, 365 Mass. 829 [1974]"). "[A]ppellate courts have traditionally accorded the trial judge considerable discretion framing jury instructions, both in determining the precise phraseology to be used, and in determining the appropriate degree of elaboration needed" (citation omitted). *Ratner* v. *Noble*, 35 Mass. App. Ct. 137, 140 (1993).

With regard to the jury instructions on the reasonableness of the attorney's fees, "the focus is not the bill submitted . . . or the amount in controversy, . . . but several factors, including 'the nature of the case and the issues presented, the time and labor required, the amount of damages involved, the result obtained, the experience, reputation and ability of the attorney, the usual price charged for similar services by other attorneys in the same area, and the amount of awards in similar cases.' " *Berman* v. *Linnane*, 434 Mass. 301, 303 (2001), quoting from *Linthicum* v. *Archambault*, 379 Mass. 381, 388-389 (1979).

Here, the judge instructed the jury as follows: "If you find that the plaintiffs' damages relating to the Maine litigation include attorney's fees, you must determine the reasonableness of the fees by considering the nature of the case and the issues presented, the time and labor required, the amount of the damages involved, the result obtained and experience, reputation and ability of the attorney." There was no error in the instruction.[8]

---

[8]There is no merit to the plaintiffs' argument that the judge should have

Moving to the instruction on the standard of gross negligence, the judge instructed the jury that the phrase as "used in the counterclaim in the Maine litigation means negligence that is substantially and appreciably higher in magnitude than ordinary negligence. It is an act or omission of an aggravated character as distinguished . . . from mere failure to exercise ordinary care." The plaintiffs, citing *Bouchard* v. *Dirigo Mut. Fire Ins. Co.*, 96 A. 244, 246 (1916), and *Blanchard* v. *Bass*, 139 A.2d 359, 363 (1958), argue that, under Maine law, gross negligence means wilful and wanton injury, including the failure to perform a manifest duty, and that the judge's instruction could have misled the jury, requiring reversal.

In response to the plaintiff's objection, the judge stated, "I actually researched Maine cases dating back from 2007 onward back to the '60's I believe, and my review of those cases doesn't persuade me that this instruction isn't the law in Maine. It's a heightened level of negligence akin to wanton and reckless conduct. And I also want to point out . . . [that] I don't want to overemphasize that phrase. The Golds could have been terminated by willful misconduct." Even were we to conclude that the instruction was legally erroneous, we are unconvinced that the plaintiffs were so prejudiced by any error as to require reversal. See *Blackstone* v. *Cashman*, 448 Mass. at 270.

Concerning the instruction on the duty to mitigate damages, "[t]he general rule with respect to mitigation of damages is that a plaintiff may not recover for damages that were avoidable by the use of reasonable precautions on his part." *Burnham* v. *Mark IV Homes, Inc.*, 387 Mass. 575, 586 (1982), citing *Fairfield* v. *Salem*, 213 Mass. 296, 297 (1913). The duty to mitigate damages unquestionably applies to a breach of contract action involving a claim for consequential damages. *Ibid.*

The plaintiffs claim that the judge misled the jury when she instructed them that "[t]he plaintiffs are under an obligation to use all reasonable efforts to minimize and lessen their damages. They must use the care that a person or entity of ordinary prudence would have exercised in seeing that the amount of

instructed the jury on the standard for attorney's fees as set forth in a Seventh Circuit case, *Taco Bell Corp.* v. *Continental Cas. Co.*, 388 F.3d 1069, 1075-1076 (7th Cir. 2004). That case was a diversity suit involving Federal law, whereas this case is controlled by Massachusetts law.

damages were minimized." There was no error. As the plaintiffs were required to mitigate damages, "we do not comprehend how, on the facts of this case, the instruction on damages could have prejudiced [the plaintiffs]." *Burham* v. *Mark IV Homes, Inc.*, 387 Mass. at 587.[9]

Finally, the plaintiffs claim that the judge erred in refusing to give the requested jury charge on unjust enrichment, claiming that it was an alternate theory under which the jury could grant the plaintiffs relief.

"Unjust enrichment, as a basis for restitution, requires more than benefit. The benefit must be *unjust*, a quality that turns on the reasonable expectations of the parties." *Community Builders, Inc.* v. *Indian Motocycle Assocs., Inc.*, 44 Mass. App. Ct. 537, 560 (1998). When determining the appropriateness of delivering an instruction, "[a] request correct in law but not appropriate to the conditions of a case is properly refused." *Mishara Constr. Co.* v. *Transit-Mixed Concrete Corp.*, 365 Mass. 122, 126 (1974), citing *Altavilla* v. *Old Colony St. Ry.*, 222 Mass. 322 (1916).

Here, the judge rejected the unjust enrichment charge "based on the posture of this case." We agree. The plaintiffs did not plead unjust enrichment in their complaint, nor did they present evidence that the defendants unjustly benefited by not defending the plaintiffs.[10] Additionally, the plaintiffs were successful in establishing that the defendants breached the contract and were awarded attorney's fees; thus, there was no prejudice resulting from the jury's not hearing the instruction.

*Directed verdict.* The plaintiffs argue that the judge erred in directing a verdict for defendants Transportation Insurance and

_____

[9]The plaintiffs' assertion that *Makino, U.S.A., Inc.* v. *Metlife Capital Credit Corp.*, 25 Mass. App. Ct. 302, 319 (1988), controls this case is without merit. There, the court determined that "[t]he standard of what is reasonable may shift when prior experience with a person makes a mitigating act seem risky," and concluded that "[a] person whose wrong forces a choice between reasonable but potentially hazardous courses cannot be heard to complain about the wronged party's selection" (citations omitted). *Ibid.* Here, there was no indication the parties had prior experience with each other, nor have the plaintiffs explained the reasonable but potentially hazardous courses they were forced to choose between as a result of the defendants' actions.

[10]The plaintiffs' argument that the defendants received a benefit of $300,000 in legal fees avoided as a result of the plaintiffs' settlement of the Maine litigation is too attenuated to require further comment.

CNA Financial. The plaintiffs claim that, since the defendants did not differentiate between themselves in their answer, and the summary judgment order establishing the breach of the duty to defend did not distinguish between them, the defendants should not have been allowed to amend their answer to state that no contractual relationship existed between defendants Transportation Insurance and CNA Financial and the plaintiffs.

"Rule 15(a) of the Massachusetts Rules of Civil Procedure, 365 Mass. 761 (1974), provides that a pleading may be amended with leave of court, 'and leave shall be freely given when justice so requires.' " *Ramirez* v. *Graham*, 64 Mass. App. Ct. 573, 579 (2005). "Broad discretion is vested in the judge in ruling on such motions." *Hubert* v. *Melrose-Wakefield Hosp. Assn.*, 40 Mass. App. Ct. 172, 175 (1996).

Additionally, our review of a directed verdict requires us "to evaluate whether 'anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be made in favor of the [nonmovant].' " *O'Brien* v. *Pearson*, 449 Mass. 377, 383 (2007), quoting from *Turnpike Motors, Inc.* v. *Newbury Group, Inc.*, 413 Mass. 119, 121 (1992).

Here, at the close of trial, the judge justifiably allowed defense counsel's motion to amend the answer to deny all claims against defendants Transportation Insurance and CNA Financial after the plaintiffs failed to produce any evidence showing a contractual relation between themselves and Transportation Insurance and CNA Financial.[11] Thus, there was no abuse of discretion in allowing the motion to amend. Furthermore, in light of the lack of evidence supporting a contractual relationship between the plaintiffs and defendants Transportation Insurance and CNA Financial, a directed verdict as to both was proper.

---

[11]The plaintiffs' reliance on *Herbert A. Sullivan, Inc.* v. *Utica Mut. Ins. Co.*, 439 Mass. 387, 399 (2003), is misplaced. There, the court affirmed the judge's denial of the plaintiffs' posttrial motion to amend the pleadings by adding two causes of action, determining that "[a]n amendment pursuant to [Mass R. Civ. P.] 15(b) also requires the moving party to show that the issue to be added was 'tried by express or implied consent of the parties.' " Here, from the beginning, the defendants' duty to defend was at issue, and the judge allowed the motion to amend to differentiate between the defendants after the plaintiffs failed to present evidence at trial of a contractual relationship between themselves and Transportation Insurance and CNA Financial.

*Attorney's fees.* The plaintiffs contend that the judge erred in her award of attorney's fees and costs incurred in establishing the defendants' duty to defend under the insurance policy. Specifically, they assert that the judge improperly limited the period of time for which attorney's fees could be awarded and abused her discretion by reducing the total amount of fees and costs awarded. The plaintiffs' motion to alter or amend judgment sought $163,672.50 in attorney's fees and $8,140.10 in costs, plus an additional $4,296 in attorney's fees and $438.08 in costs incurred in bringing the motion.

Under the *Gamache* exception to the traditional "American Rule" that litigants are responsible for their own attorney's fees, "an insured 'is entitled to the reasonable attorney's fees and expenses incurred in successfully establishing the insurer's duty to defend under the policy.' " *Rubenstein* v. *Royal Ins. Co. of America*, 429 Mass. 355, 359 (1999), quoting from *Preferred Mut. Ins. Co.* v. *Gamache*, 426 Mass. 93, 98 (1997). See *Hanover Ins. Co.* v. *Golden*, 436 Mass. 584, 584, 586 (2002). Such reasonable attorney's fees and expenses are limited solely to those incurred to establish the insurer's duty to defend. See *Rubenstein* v. *Royal Ins. Co. of America, supra* at 361.

In determining the amount of such attorney's fees, "[t]he basic measure of reasonable attorney's fees is a 'fair market rate for the time reasonably spent preparing and litigating a case.' " *Stowe* v. *Bologna*, 417 Mass. 199, 203 (1994), quoting from *Fontaine* v. *Ebtec Corp.*, 415 Mass. 309, 326 (1993). As with all such awards, "[w]e review the judge's award of attorney's fees and costs for abuse of discretion [and] [t]he judge's decision will be reversed only if it is clearly erroneous." *WHTR Real Estate Ltd. Partnership* v. *Venture Distrib., Inc.*, 63 Mass. App. Ct. 229, 235 (2005).

The judge below correctly concluded that the *Gamache* exception permitted the plaintiffs to recover attorney's fees and costs only for the time period necessary to establish the duty to defend. In this case, that period began in September of 2003 and lasted through September 8, 2004, "when they received the favorable ruling on their partial summary judgment motion," which established the defendants' duty to defend. Based on this time frame, she concluded that of the requested $163,672.50 in attorney's fees and $8,140.10 in costs (plus an additional $4,296

in attorney's fees and $438.08 in costs incurred in bringing the posttrial motion), at most only $100,782.50 in attorney's fees and $313.18 in costs were incurred during the one-year September to September time period. As the judge properly limited attorney's fees and costs to the time period necessary to establish the duty to defend, there was no error.

Nor was there error in the judge's reduction of attorney's fees and costs from $100,782.50 and $313.18 to $22,420 and $313.18. The judge reviewed the fees and costs submitted by the plaintiffs, taking into account (1) her knowledge and experience as a trial attorney and judge . . . ; (2) "the relatively straightforward nature of the issues involved in the motion"; (3) "the dispensableness of lengthy client appraisals, given that both of the Golds are attorneys, and extensive discovery, in light of the purely legal nature . . . of the counterclaim"; (4) the size of the actual award ($38,000) in the case; and (5) the amount of the defendants' corresponding fees ($12,174.50). Based on these factors, the judge acted within her discretion by reducing attorney's fees and costs to an award of $22,420 and $313.18. As these factors properly took into account the elements to be considered in determining the reasonableness of attorney's fees, there was no abuse of discretion.[12]

*Conclusion.* Ultimately the plaintiffs received a jury award of $38,000, with interest of $24,049.53, plus $22,733.80 in additional fees and costs, for a total of $84,783.33. As we discern no error below warranting reversal, the judgment is affirmed.[13]

*Judgment affirmed.*

---

[12]Needless to say, the plaintiffs' request for an interim award is denied.

[13]The request by both parties for appellate attorney's fees is denied.